TEXTRON INVESTMENT MANAGEMENT COMPANY, INC. and Farm Bureau Mutual Insurance Company, Inc., Plaintiffs,

v.

STRUTHERS THERMO–FLOOD CORPORATION; Struthers Wells Corporation; Crown Andersen, Inc.; City of Winfield, Kansas; and City of Arkansas City, Kansas, Defendants.

Civ. A. No. 94–1072–MLB.

United States District Court,
D. Kansas.

June 22, 1994.

H.W. Fanning, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for Textron Investment Management Company, Inc., Farm Bureau Mut. Ins. Co., Inc.

James A. Walker, Rachael K. Pirner, Triplett, Woolf & Garretson, Wichita, KS, for Struthers Thermo–Flood Corp., Struthers Wells Corp.

Thomas D. Kitch, Jordan E. Clay, Fleeson, Gooing, Coulson & Kitch, L.L.C., Alan R. Welch, Matlack & Foote, Wichita, KS, Richard P. Decker, F. Edwin Hallman, Jr., David C. Moss, Decker & Hallman, Atlanta, GA, for Crown Andersen, Inc.

Alan L. Rupe, Steven J. Rupp, Thomas L. Steele, Rupe & Girard Law Offices, P.A., Wichita, KS, for City of Winfield, Kan., City of Arkansas City, Kan.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on defendant Crown Andersen's (Crown) motion for change of venue pursuant to 28 U.S.C. § 1412 (Doc. 3) and plaintiffs' and municipal defendants' motions to remand this case to Cowley County District Court or in the alternative abstain or refer the case to the bankruptcy court. (Docs. 13 and 16)

### Factual Background

In 1980, the municipal defendants issued $4 million in industrial revenue bonds (IRBs) for the purpose of improving certain real property (Strother Field Industrial Park) to be leased by the municipalities to defendant Struthers Thermo–Flood Corporation (STFC). Plaintiffs purchased the entire bond issuance. In connection with the bond issuance, STFC and its sole stockholder, Struthers Wells Corporation (SWC) executed separate guaranty agreements whereby they agreed to pay the bonds in full.

In June, 1987, SWC entered into an agreement with Crown to sell all of STFC's outstanding stock. STFC conducted business at the Strother Field site until March, 1992, when it vacated the site due to contamination. At that time, STFC notified the municipalities and Bank IV [1] that it considered the lease null and void. The Environmental Protection Agency (EPA) later notified STFC that it was a potentially responsible party

---

1. Fiscal agent for the bonds.

under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA).[2]

Plaintiffs thereupon commenced this lawsuit on July 21, 1992, in Cowley County District Court. Plaintiffs sought to recover on the IRBs under various theories, including a claim that they were third party beneficiaries of the Stock Purchase Agreement between SWC and Crown.

Crown answered and filed a crossclaim against SWC alleging fraud, breach of contract, common law fraud, and indemnity. SWC answered and filed a crossclaim against Crown alleging breach of contract, indemnity, and seeking a declaratory judgment. The municipalities answered and filed a crossclaim against Crown alleging breach of contract and indemnity. Shortly after the petition was filed, STFC filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court in the Northern District of Georgia. Thus, STFC was never served and is no longer a party to this lawsuit.

On January 7, 1993, the plaintiffs were granted summary judgment against SWC. The case proceeded until February 18, 1994, when SWC filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Pennsylvania. On March 1, 1994, Crown removed this case to this court pursuant to 28 U.S.C. § 1452(a).

### Discussion

■ Plaintiffs argue this case should be remanded to state court because Crown's removal was not made in a timely manner under 28 U.S.C. § 1446(b). Under the general removal statute, a party has thirty days after service of process to remove a case to federal court. Crown responds that it is Bankruptcy Rule 9027(a)(2), not § 1446(b), that governs the timeliness of removal under § 1452(a). If the bankruptcy rule applies to this case, Crown would have ninety days after the bankruptcy petition was filed to remove.

**2.** 42 U.S.C. § 9607(a).

**3.** In reaching this conclusion, the court finds instructive the discussion of this issue found in

This issue has been characterized by another court as "one of the worst legislative quagmires caused by the 1984 Amendments to the Bankruptcy Code." *In re Eagle Bend Dev.,* 61 B.R. 451, 452 (Bankr.W.D.La.1986). While some courts have taken the view that Bankruptcy Rule 9027 no longer governs removals pursuant to 28 U.S.C. § 1452, *Intra Muros Trust,* 163 B.R. 344, 345 (Bankr. N.D.Ind.1994), the majority of courts have upheld the continued validity of Bankruptcy Rule 9027. *In re Klober,* 142 B.R. 300, 301 (Bankr.E.D.Ark.1992); *In re Tandem Enterprises, Ltd.,* 124 B.R. 283, 286 (Bankr.N.D.Ill. 1991) (Citations omitted). This court aligns itself with the majority view.[3]

In 1978, Congress enacted a series of amendments to the Bankruptcy Code that included 28 U.S.C. § 1478, which governed removal. Although the statute set no removal deadlines or procedure, a nationwide set of bankruptcy practice rules was eventually adopted following its enactment. The Advisory Committee Note reflects that separate removal procedures and deadlines were established under Bankruptcy Rule 9027 because of unique concerns and policies embodied in the Bankruptcy Code.

In response to the United States Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98–353, 98 Stat. 333 (1984). These amendments repealed Section 1478 and replaced it with section 1452. At this point a disagreement arose whether this change had implicitly repealed Bankruptcy Rule 9027.

One line of cases found § 1446 to be the proper removal procedure. The leading case articulating this view, *State Bank of Lombard v. Chart House,* 46 B.R. 468 (Bankr. N.D.Ill.1985), offered three reasons in support of its position. First, the absence of time limits in § 1452 indicated the time limits

"Removal of State Court Cases to Bankruptcy Court," 27 Gonz.L.Rev. 109 (1991).

of § 1446 should control. Second, the legislative history was silent as to whether § 1452 was enacted to avoid § 1446's time limits. Third, the automatic stay provisions of the Bankruptcy Code operate to protect debtors who file bankruptcy more than thirty days after being served in a state court action. *Id.* at 473.

The leading case rejecting this view is *In re Pacor*, 72 B.R. 927 (Bankr.E.D.Pa.1987). *Pacor* interpreted the legislative history to indicate that Congress did not intend to alter the procedure or time limits set out in Bankruptcy Rule 9027. This viewpoint also notes a difference in the language used by the respective statutes. Section 1446 limits the right of removal to the defendant, while § 1452 authorizes a party plaintiff to remove.

This court is persuaded that Congress did not intend to repeal Bankruptcy Rule 9027 when it enacted the 1984 amendments. The court notes that amendments to the bankruptcy rules, including Rule 9027, were adopted in 1987 pursuant to 28 U.S.C. § 2075. Congress' failure to disapprove of the amendments is some evidence of its intention that Bankruptcy Rule 9027 remain extant.

 Moreover, the practical realities of this case favor the flexible time limits embodied in Bankruptcy Rule 9027. If a litigant has a right to have its case heard in federal court, it should not lose this right due to events beyond its control. In the case at bar, Crown could not have removed the case to federal court prior to SWC's bankruptcy filing, which took place over a year and a half after the lawsuit was commenced. Crown acted with dispatch once SWC filed its bankruptcy petition.

 The court finds that Bankruptcy Rule 9027, not § 1446(b), governs the time limits for removal of actions to federal court. Crown's removal is timely under the rule.

 Plaintiffs argue the case is not removable under § 1452(a) because this court does not have jurisdiction of any claim or cause of action under 28 U.S.C. § 1334. That statute provides in relevant part:

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

In *In re Gardner*, 913 F.2d 1515 (10th Cir.1990), the Tenth Circuit delineated what proceedings are "related to cases under title 11."

Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court. The test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate.

*Id.* at 1518 (Citations omitted).

Plaintiffs argue that resolution of its dispute with Crown will not impact the SWC bankruptcy estate. In considering their argument, it must be kept in mind that plaintiffs already have a judgment against SWC and have filed a creditor's proof of claim in SWC's bankruptcy proceeding. Plaintiffs contend that if they prevail on their claim against Crown, their judgment against the SWC bankruptcy estate is reduced by the amount Crown pays. At the same time, however, Crown's indemnification claim against the SWC bankruptcy estate increases by the same amount Crown pays plaintiffs. On the other hand, if plaintiffs lose their claim against Crown, the amount of their judgment claim against the SWC bankruptcy estate remains unaffected and Crown's indemnification claim is moot. Either way, plaintiffs reason the amount of the claim against the SWC bankruptcy estate is unchanged. In their view, only the apportionment of the amount as between plaintiffs and Crown changes. Both plaintiffs and Crown fall in

the same class under SWC's reorganization plan.

Crown responds that to the extent either plaintiffs or the debtor recover from Crown, such recovery will impact the administration of the bankruptcy estate. With respect to the plaintiffs' claim against it, Crown's argument rests on the premise that any recovery will be paid into the bankruptcy estate.

The court finds Crown's understanding of third-party beneficiary actions to be flawed. In *United States v. United Services Auto. Ass'n*, 968 F.2d 1000 (10th Cir.1992), the court summarized the principles governing a third-party beneficiary action:

> Under Kansas law, to be a third-party beneficiary to a contract, the contract must be made for the third-party's benefit. Because the third-party beneficiary can enforce the contract if it is entitled to receive benefits from the contract, the intent to benefit the third-party must be clearly expressed in the contract. General rules of contract construction are applied to determine the intent of the contracting parties as to the rights of a third-party. Before reaching the issue of whether a third-party may directly enforce a contract from which it would benefit, the third-party must show the existence of a provision in the contract that operates to its benefit.

*Id.* at 1001–02 (Citations omitted).

■ Crown erroneously assumes plaintiffs are derivatively asserting SWC's rights under the contract. On the contrary, plaintiffs are seeking to directly enforce the contract for their own benefit. If plaintiffs obtain a judgment against Crown, Crown will satisfy the judgment by paying plaintiffs, not the SWC bankruptcy estate. Of course, to the extent plaintiffs recover against Crown, their judgment claim against the SWC bankruptcy estate will diminish. But to suggest this result will have any real effect on the admin-

istration of the bankruptcy estate is to elevate form over substance. The court agrees with plaintiffs' argument that its claim against Crown is not related to the SWC bankruptcy estate.[4]

■ The converse is true with respect to the crossclaim asserted by the SWC bankruptcy estate against Crown. If the debtor recovers on its indemnity claim against Crown, this recovery will augment the assets comprising the SWC bankruptcy estate and inure to the benefit of creditors making claims against the estate.

■ Under § 1452(a), removal is available only as to a "claim or cause of action *in a civil proceeding.*" *In re Brateman Bros., Inc.*, 135 B.R. 853, 854–55 (Bankr.N.D.Ind. 1991). Since plaintiffs' claim against Crown can have no conceivable effect on the SWC bankruptcy estate, this claim is not removable and must be remanded to state court.

■ Under § 1452(b), the court is authorized to remand the remaining claims on any equitable ground. In determining whether to remand a case on equitable grounds the court must consider whether:

> (1) there is duplication of judicial resources or uneconomical use of judicial resources; (2) the remand will adversely affect the administration of the bankruptcy estate; (3) the case involves questions of state law better addressed by a state court; (4) there are comity considerations; (5) there is prejudice to unremoved parties; (6) the remand lessens the possibility of inconsistent results; and (7) the court where the actions originated has greater expertise.

*In re Southern Technical College, Inc.*, 144 B.R. 421, 422 (Bankr.E.D.Ark.1992) (Citation omitted).

---

**4.** Crown suggests that plaintiffs' claim against it is stayed pursuant to 11 U.S.C. § 362. Crown's position is erroneous. The automatic stay applies only to claims against the debtor and does not extend to the debtor's codefendants. *Croyden Associates v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir.1992), *cert. denied* — U.S. ——, 113 S.Ct. 1251, 122 L.Ed.2d 650 (1993) (citing *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir.1992); *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984)).

SWC's crossclaims against Crown are not stayed by § 362. *Carley Capital Group v. Fireman's Fund Insurance Company*, 889 F.2d 1126, 1127 (D.C.Cir.1989); *See Mid Kansas Fed. Sav. v. Orpheum Theater Co.*, 151 B.R. 560, 563 (Bankr. D.Kan.1993) (Citations omitted).

■ In the court's view, equitable considerations dictate remanding this case to Cowley County District Court. The case has been pending for over a year and a half and the state court is familiar with the issues. The case is set for trial and motions are pending. The expeditious disposition of the case will therefore be furthered by a remand. It would be a waste of judicial resources to try the plaintiffs' case against Crown while litigating the indemnity crossclaims in Pennsylvania.[5] Since these crossclaims are inextricably tied to the plaintiffs' claims, it makes sense to try these claims together. Remanding the case also avoids the possibility of prejudice to the municipal defendants, who have no claims against SWC. Absent remand, the municipal defendants may have to travel to Pennsylvania to litigate their claims.

The court does not perceive that remand will result in prejudice to the efficient administration of the bankruptcy estate. As the court has earlier explained, the plaintiffs' claim will have no effect on the bankruptcy estate. The crossclaims involve state law issues that the state court can adjudicate in a more timely manner than the bankruptcy court.

Plaintiffs' and municipal defendants' motions (Doc. 13 and 16) are granted and Crown's motion for change of venue (Doc. 3) is denied.

Motions for reconsideration of this order are not encouraged. Any such motion and any response thereto shall be limited to 5 pages. No reply memoranda shall be filed.

IT IS SO ORDERED.