**In re DONINGTON, KARCHER, SALMOND, RONAN & RAINONE, P.A., n/k/a Karcher, Salmond, Rainone & Barrett, P.A., Debtor.**

**William M. BURKE, M.D., Individually and as Trustee of the William M. Burke, P.A. Employee Profit Sharing Trust, Plaintiffs,**

v.

**DONINGTON, KARCHER, SALMOND, RONAN & RAINONE, P.A., et al., Defendants.**

**UNITED JERSEY BANK, Successor in Interest to United Jersey Bank/Central, N.A., Third–Party Plaintiff,**

v.

**KARCHER, SALMOND, RAINONE & BARRETT, P.A., et al., Third–Party Defendants.**

**Civil Action No. 95–5737 (WHW).**

United States District Court,
D. New Jersey.

April 16, 1996.

---

G. Glennon Troublefield, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Roseland, NJ, Eric S. Lentz, Chatham, NJ, for William M. Burke, MD.

Harold J. Ruvoldt, Jr., Fischbein, Badillo, Wagner, Itzler, Jersey City, NJ, for Louis N. Rainone, Ronald H. Gordon, Alan J. Karcher.

Lawrence E. Miller, LeBoeuf, Lamb, Leiby & MacRae, Newark, NJ, for United Jersey Bank/Central, N.A.

## AMENDED ORDER

WALLS, District Judge.

In this action, plaintiff William M. Burke ("Burke") moved for abstention and remand to state court and for modification of the automatic stay. Third-party plaintiff United Jersey Bank ("UJB") moved to have its third-party action against certain individual guarantors severed and remanded to state court. The Court referred the motions to the magistrate judge.

The magistrate judge heard oral argument on the motions. By final order, he granted Burke and UJB's motions for remand of this action to state court. By report and recommendation, he suggested that Burke's motion to modify the stay be granted to permit him to adjudicate his state-law claims against debtor Donington, Karcher, Salmond, Ronan & Rainone, P.A. ("Donington, Karcher") in state court. However, the magistrate judge also advised that recovery of any judgment from these claims should be prohibited until a further order of the bankruptcy court permits Burke to pursue an action to collect from the property of Donington, Karcher. No party has filed exceptions to the magistrate judge's report and recommendation.

After reviewing the report and recommendation, the Court is satisfied that it is not clearly erroneous, but correct. Therefore, the Court enters the following order.

The Court **approves and adopts** the report and recommendation.

The Court **grants** Burke's motion to modify the stay to permit him to adjudicate his state-law claims against Donington, Karcher in state court.

The Court **orders** that recovery of any judgment from these claims will be prohibited until a further order of the bankruptcy court permits Burke to pursue an action to collect from the property of Donington, Karcher.

SO ORDERED.

## OPINION

March 20, 1996

PISANO, United States Magistrate Judge:

Before the Court are two motions: First, plaintiff William M. Burke, M.D. moves for abstention and remand to state court and for modification of the automatic stay. Also, third-party plaintiff United Jersey Bank seeks to have its third-party action against the individual guarantors severed and remanded to state court. Opposition has been filed in response to both motions, and the Court heard oral argument on January 8, 1996.

## FACTUAL BACKGROUND

This action arises out of several transactions involving the now-defunct law firm of Donington, Karcher, Salmond, Ronan & Rainone, P.A. ("Donington, Karcher"). The various complaints, answers, and third-party complaints detail the following factual backdrop to this complicated litigation.

In May, 1991, United Jersey Bank ("UJB") extended to Donington, Karcher a loan in the amount of $750,000, and the firm executed a Promissory Note in that amount. On the same date, Donington, Karcher and UJB entered into an Accounts Receivable Loan and Security Agreement ("1991 Security Agreement") which provided that UJB would hold

a first lien on all of the firm's present or future accounts receivables, notes, instruments, or chattel paper. Also, several individual shareholders of the firm [1] executed personal guaranties, unconditionally guaranteeing the loan made to the firm by UJB. The guarantees provided that the individual guarantors expressly waived any right to require UJB to bring an action against the Borrower in order to resort to collateral before pursuing payment.

In February, 1994, Donington, Karcher was faced with severe financial circumstances that were at least partially the result of delays of payments owed by the Warwick Insurance Company ("Warwick"), which was in liquidation by the State of New Jersey. To reduce the financial pressures on the firm, members of the firm solicited a loan in the amount of $100,000 from John Scott Donington, Esq. ("Donington"), a stockholder in the firm. Unable to make the loan, Donington sought to secure the amount from plaintiff William M. Burke, M.D. ("Burke"), a close personal friend of Donington and a client of the firm. As a result, Burke issued a check to the law firm in the amount of $100,000, and a Note was executed on February 24, 1994 between Donington and the firm in the same amount. The Note provided that the balance plus 10% interest was to be repaid on or before May 1, 1995, and that in the event the full amount was not repaid on that date, the firm agreed to pay interest at the rate of 10% per year on the outstanding balance. On the same day, Donington assigned the Note to Burke, and the firm was to make its payments directly to Burke. The Complaint alleges that any funds received in payment to the firm by Warwick would be first utilized the repay the Burke loan.

Plaintiff Burke filed the original Complaint in this action in the Superior Court of New Jersey, Essex County, on August 5, 1995 (the "Burke Action"). Burke named as defendants the Donington, Karcher law firm, UJB, and Karcher, Rainone, and Gordon, all shareholders of the firm. In the Complaint,

Burke asserted three counts for damages in connection with the $100,000 loan to Donington, Karcher. The Complaint's first count seeks reformation of the loan documents, repayment of the entire outstanding balance, injunctive relief requiring the firm to place the Warwick receivables in a separate account, and a determination of the rights and obligations of Burke and UJB. Counts Two and Three allege malpractice claims against the firm and Karcher, Rainone, and Gordon individually. Burke's suit seeks payment of the law firm's accounts receivable, which UJB alleges are part of their collateral for their loans. The Complaint therefore named UJB for the purpose of determining the rights and obligations of Burke and UJB with respect to the accounts receivable.

In its Answer to Burke's Complaint, UJB brought cross-claims against the firm, seeking the appointment of a statutory receiver. UJB also brought a third-party Complaint against individual shareholders Karcher, Donington, Gordon, Lazarus, Rainone, McGuire, Ronan, Salmond, Luongo, Leroe, and Connell, each of whom individually guaranteed the loans made to the firm by UJB (the "Third-party Action"). Additionally, Donington served an answer to the third-party complaint and the crossclaims asserted against him in his individual capacity as a guarantor, as well as a fourth-party complaint against the law firm's various shareholders. The fourth-party Complaint alleges breach of contract claims in connection with the agreement entered into by the shareholders when Donington left the firm.

On August 17, 1995, Donington, Karcher filed a voluntary petition for relief under Title 11 of the federal bankruptcy laws. As a result of this filing, the Burke Action in Essex County was automatically stayed as to the law firm (the "Debtor"). Additionally, New Jersey Superior Court Judge Harry A. Margolis administratively stayed the remainder of the proceedings in the state court, including Burke's legal malpractice claims

---

1. The individual shareholders are J. Scott Donington ("Donington"), Louis N. Rainone ("Rainone"), Alan J. Karcher ("Karcher"), Ronald H. Gordon ("Gordon"), Michael L. Lazarus ("Lazarus"), James J. McGuire, Jr. ("McGuire"), James M. Ronan ("Ronan"), William E. Salmond ("Salmond"), Anthony Luongo ("Luongo"), Bernard Leroe ("Leroe"), and R. Peter Connell ("Connell"). Each has been named in the Complaint.

against the non-debtor defendants and the third-party action against the individual non-debtor defendants.

On November 6, 1995, Burke filed a motion in the bankruptcy court seeking to modify the automatic stay to permit him to pursue the state court action against both the Debtor and the non-debtor defendants. On the same date UJB made application to the Superior Court to continue its third-party action against the individual guarantors because the automatic stay was inapplicable to them. On November 15, 1995, non-debtor defendants Karcher, Rainone, and Gordon (the "removing defendants") filed a notice of removal, thereby removing the state court action from Essex County to this Court. Thereafter, the bankruptcy court denied Burke's motion to modify the automatic stay. Burke now moves this Court to abstain and remand the action back to state court and to modify the stay to permit him to pursue his state law claims against the Debtor. Also, third-party plaintiff UJB has moved to sever its third-party action against the individual guarantors from the Burke action and to remand it to state court. Both the Debtor and the individual non-debtor defendants oppose these motions and assert that this entire suit should be before the bankruptcy court.[2]

## DISCUSSION

### I. MOTIONS TO ABSTAIN AND REMAND

■ Because the District of New Jersey treats motions to remand as non-dispositive, the Court will decide these motions by final order. See Campbell v. IBM, 912 F.Supp. 116, 118 (D.N.J.1996).

#### A. Timeliness of the Removal

■ Burke first asserts that the non-debtor defendants erroneously filed their notice of removal in violation of the general removal statute, 28 U.S.C. § 1446, which requires a notice of removal to be filed within thirty

days of the service of the pleading upon which authority for the removal is based. Defendants' removal was based on the bankruptcy removal statute, 28 U.S.C. § 1452, which authorizes a party to remove a claim or action to the district court if 28 U.S.C. § 1334 provides a federal jurisdictional basis for the action. Section 1334 grants to district courts original but not exclusive jurisdiction over civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Donington, Karcher is a named defendant in the state court action and the Debtor in the bankruptcy case, and the removing defendants base federal jurisdiction and their removal on their contention that the civil action is "related to" the Donington, Karcher bankruptcy.

The dispute arises over the appropriate statutory time limit for the removal. Burke argues that the thirty day time limit of Section 1446(b) applies to notices of removal brought under Section 1452. The Debtor filed for relief under the bankruptcy laws on August 17, 1995, and Burke argues that the removing defendants were required under 28 U.S.C. § 1446 to file a notice of removal within thirty days of that date. The notice of removal was filed on November 15, 1995, more than thirty days after the bankruptcy filing.

The defendants assert that Bankruptcy Rule 9027, and not 28 U.S.C. § 1446(b), governs the time period for removal under Section 1452, and, therefore, the removal was timely. Bankruptcy Rule 9027 prescribes a ninety day time limitation for filing a petition for removal in cases where a state civil proceeding was initiated before commencement of the bankruptcy action. Fed.R.Bankr.P. 9027(a)(2)(A).

Plaintiff asserts that Bankruptcy Rule 9027 applies only to cases removed pursuant to 28 U.S.C. § 1478(a), the removal statute

---

2. Indeed, pursuant to the Local Rules for the District of New Jersey, this case should have been immediately referred to the bankruptcy court upon being removed from Essex County. For reasons unknown to the Court, this did not occur, and the present motions landed on the

district court's motion calendar. The motions then were referred to the undersigned by the Honorable William H. Walls. Clearly having jurisdiction over this action, see 28 U.S.C. § 1334(b), the Court is required to exercise it.

that Section 1452 replaced.[3] Under this view, the thirty day time limitation of the general federal removal statute—Section 1446—applies to removals filed pursuant to 28 U.S.C. § 1452. This position, however, represents the view of a minority of courts that have considered the issue. *See Intra Muros Trust v. Truck Stop Scale Co.*, 163 B.R. 344, 345 (N.D.Ind.1994); *State Bank of Lombard v. Chart House*, 46 B.R. 468 (N.D.Ill.1985).

The majority of courts have upheld the applicability of Bankruptcy Rule 9027 to Section 1452 and enforced a ninety day time limitation. *See Textron Investment Mgmt. Co. v. Struthers Thermo–Flood Corp.*, 169 B.R. 206, 210 (D.Kan.1994); *In re Klober*, 142 B.R. 300, 301 (Bankr.E.D.Ark.1992); *In re Pacor, Inc.*, 72 B.R. 927, 930–31 (Bankr. E.D.Pa.1987); *In re Futura Indus., Inc.*, 69 B.R. 831, 833 (Bankr.E.D.Pa.1987); *In re Philadelphia Gold Corp.*, 56 B.R. 87, 89–90 (Bankr.E.D.Pa.1985). The majority rationale is based upon the view that "Rule 9027 was not so tied to the former removal statute, § 1478, that the repeal of § 1478, and the subsequent enactment of § 1452, caused the implicit repeal of Rule 9027." *In re Aztec Indus., Inc.*, 84 B.R. 464, 469 (Bankr. N.D.Ohio 1987). This Court will follow the majority view and apply the ninety day time limitation for the filing of the petition for removal. Accordingly, defendants' removal of the Burke action was timely filed, and plaintiff's first ground for remand fails.

## B. Abstention and Remand

Three methods exist through which a federal court may decline to exercise its jurisdiction over actions properly removed pursuant to Section 1334(b)'s jurisdictional grant. Section 1452 not only provides for the removal of state court actions to federal court by virtue of the jurisdiction conferred by Section 1334(b), but also grants the district court authority to "remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Also, Section 1334(c)(1) provides for permissive or discretionary abstention, permitting a district court to abstain in the interests of justice and comity or out of respect for state law:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Finally, Section 1334(c)(2) contains a provision for mandatory abstention, whereby the district court determines that the action is "outside the removal jurisdiction granted to the federal courts by Congress," *Balcor/Morristown Ltd. Partnership v. Vector Whippany Assoc.*, 181 B.R. 781, 788 (D.N.J.1995), and remands the suit back to state court. *In re Pacor, Inc.*, 72 B.R. 927, 932 (Bankr.E.D.Pa.1987), *adopted*, 86 B.R. 808 (E.D.Pa.1987), *appeal dismissed*, 1988 WL 235479 (3d Cir.1988).

### 1. Mandatory Abstention

 Burke argues that the Court should mandatorily abstain from exercising its jurisdiction in this action and remand the suit back to the state court. UJB further argues that the Third-party Action should be sev-

---

**3.** Section 1478 governed removal of state court actions to "bankruptcy court," and Bankruptcy Rule 9027 set forth the appropriate time deadlines for such removals. The requirements of Rule 9027 were explicitly distinct from those set forth in 28 U.S.C. § 1441, the general removal statute, in part because of the unique policies incorporated into the Bankruptcy Code. *See In re Pacor, Inc.*, 72 B.R. 927, 930 (Bankr.E.D.Pa. 1987), *aff'd*, 86 B.R. 808 (E.D.Pa.1987), *appeal dismissed*, 1988 WL 235479 (3d Cir.1988).

Congress replaced Section 1478 by enacting Section 1452, which struck the reference to "bankruptcy court" and instead referred to removals to the "district court." One of the initial results of the enactment of Section 1452 was that many courts struggled to determine the continued validity and applicability of Rule 9027, which specifically governed matters removed to the "bankruptcy court." *See, e.g., Allen County Bank & Trust Co. v. Valvmatic Intern.*, 51 B.R. 578 (N.D.Ind.1985) (holding Rule 9027 to be inapplicable to Section 1452 removals because the rule called for removal to the "bankruptcy court" while the statute referred to removal to the "district court"). Since then, however, Congress has altered the language of Rule 9027 by removing the words "in the bankruptcy court," and a majority of courts have found that the Rule applies to removals under Section 1452.

ered and remanded pursuant to the mandatory abstention under 28 U.S.C. § 1334(c)(2).

■ It is well established in this circuit that mandatory abstention pursuant to Section 1334(c)(2) is appropriate only when the following six requirements are satisfied:

(1) a timely motion is made;

(2) the proceeding is based upon a state law claim or state law cause of action;

(3) the proceeding is related to a case under Title 11;

(4) the proceeding does not arise under Title 11;

(5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and

(6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

See 28 U.S.C. § 1334(c)(2). *In re Warren,* 125 B.R. 128, 131 (E.D.Pa.1991). It is undisputed that this case clearly satisfies the first, second, fifth, and sixth factors. Burke and UJB have made timely motions, and all of the claims present in this litigation are based upon state law. Further, diversity of citizenship does not exist, no federal question has been presented, and but for the jurisdictional grant of Section 1334, this Court would lack subject matter jurisdiction over the entire action. Finally, plaintiff commenced the action in New Jersey Superior Court, and the removing defendants have demonstrated no concrete reason why the action could not be "timely adjudicated" in that forum.

In order to qualify for mandatory abstention, therefore, this action must be "related to a case under title 11 but not arising under title 11 or arising in a case under title 11." 28 U.S.C. 1334(c)(2).

■ The Third Circuit's test for determining whether a civil proceeding is "related to" bankruptcy is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). The *Pacor* decision clearly delineates a broad test for "related to" jurisdiction, and several other circuits have relied upon its reasoning. *See, e.g., In re Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir.1990); *In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988); *Matter of Wood,* 825 F.2d 90, 93 (5th Cir.1987). Here, the Court finds that the Burke Action and the Third-party Action are clearly "related to" the Debtor's bankruptcy case. In the Burke Action, the Debtor is a party to the proceedings, and the resolution of the case will likely have some impact upon Burke's and UJB's claims to the Debtor's estate. Accordingly, there can be no dispute that the proceeding is related to the bankruptcy. As to the Third-party Action, it is certainly "conceivable" that its outcome could have an effect on the liquidation of the debtor's estate. The Court therefore finds that both the Burke Action and the Third-party Action are "related to" the Debtor's Chapter 11 filing, and, therefore, both actions satisfy the third factor under Section 1334(c)(2).

Whether this proceeding "arises" under either title 11 or a case under title 11 depends on whether the nature of the action falls within the core jurisdiction of the bankruptcy court and is therefore found to be a "core proceeding." If so, the nature of the action requires the retention of federal jurisdiction, and remand would be inappropriate. If the action may not be deemed a "core-proceeding," however, it will satisfy each of the factors set out in Section 1334(c)(2), will be suitable for mandatory abstention, and should be remanded to state court. *See Balcor,* 181 B.R. at 788; *Pacor,* 72 B.R. at 932.[4]

The core/non-core distinction is rooted in the Supreme Court's decision in *Northern Pipeline Construction Company v. Mara-*

---

**4.** In their arguments in opposition to Burke's motion to remand, the individual shareholder defendants argue that the Bankruptcy Court is the proper court to determine whether this proceeding is core or non-core. Section 1452(b) states that "any court to which such claim or cause of action is removed may remand such claim or cause of action," and, therefore, the district court has jurisdiction to determine issues surrounding the motion to remand. Actions removed pursuant to 28 U.S.C. § 1452 are removed to the district court, and the bankruptcy court is a unit of the district court. *See* 28 U.S.C. § 151. Accordingly, the district court, while not the exclusive forum for this motion, is certainly a proper forum for this matter.

*thon Pipe Line Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon,* the Court held that bankruptcy courts do not have the power to adjudicate "state-created private rights" that are the province of Article III courts. *Id.* at 71, 102 S.Ct. at 2871. Instead, bankruptcy courts are empowered to issue final judgments only in case arising under the core of their Congressionally granted power. *Id.* In response, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, which codified the core/non-core distinction and provides that bankruptcy judges may hear and enter final judgments in "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). Though Congress did not define "core proceedings," it did set forth the following non-exclusive list of actions deemed core:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the state against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2)(A)–(O).

Courts have employed a wide array of tests to determine whether claims are core or non-core, most of which have focused on the two ambiguous catch-all provisions—subsections (A) and (O). *See, e.g., In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir.1986) (taking a narrow view and holding that state law contract claims that do not fall within the specifically enumerated core proceedings in 28 U.S.C. § 157(b)(2)(B)–(N) are non-core proceedings); *In re Arnold Print Works, Inc.,* 815 F.2d 165, 168 (1st Cir.1987) (interpreting core proceedings "broadly, close to or congruent with constitutional limits"). In choosing an analysis to adopt, courts must remain mindful of Congress' express statement that the determination of whether a proceeding is core or non-core "shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(B)(3).

■■■ The Third Circuit's most recent pronouncements on the core/non-core issue adopt a test holding that " 'a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.' " *In re The Guild and Gallery Plus, Inc.,* 72 F.3d 1171, 1178 (3d Cir.1996) (quoting *In re Marcus Hook Dev. Park Inc.,* 943 F.2d 261, 267 (3d Cir.1991) (employing the test first set forth by the Fifth Circuit in *In re Wood,* 825 F.2d 90, 97 (5th Cir.1987))). *See also Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir. 1990); *In re Davis,* 899 F.2d 1136, 1140–41 (11th Cir.), *cert. denied,* 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990). Courts in this circuit also deem relevant whether the claim arose pre-petition or post-petition and often find that post-petition claims are more appropriately designated as a core proceeding. *See Beard v. Braunstein,* 914 F.2d 434, 444–45 (3d Cir.1990); *Bernheim v. Chubb*

*Ins. Co.*, 160 B.R. 42, 45 (D.N.J.1993); *Matter of Billing*, 150 B.R. 563, 565 (D.N.J.1993), *rev'd on other grounds*, 22 F.3d 1242 (3d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994); *Davis v. Merv Griffin Co.*, 128 B.R. 78, 90–91 (D.N.J.1991).

The Burke Action asserts claims against both the law firm Debtor and the individual defendants for breach of contract and attorney malpractice and negligence, and it names UJB as a defendant in order to obtain a determination of the rights of Burke and UJB with respect to the Debtor's accounts receivables. The Third-party Action brought by UJB does not involve the Debtor, as UJB's claims against the Debtor were asserted as crossclaims and, therefore, are a part of the Burke Action. Instead, the Third-party Action names only the individual shareholders and asserts contract claims arising out of the personal guarantees made as part of the 1991 Loan and Security Agreement.

■ The entire Burke Action involves only "garden variety" contract and tort claims and is not against the bankruptcy estate. *See Beard*, 914 F.2d at 444. Further, no substantive right under the Bankruptcy Code is at issue in the action. *See In re The Guild and Gallery*, 72 F.3d at 1178. The facts giving rise to the contract claims involve prepetition events and contracts, and the alleged breach occurred before the Debtor's bankruptcy filing. The contract claims therefore involve state law issues, exist independently from the Debtor's Chapter 11 reorganization, and cannot be said to be an "integral part of the bankruptcy." *Beard*, 914 F.2d at 445. The malpractice and negligence claims similarly involve pre-petition conduct, relate only peripherally to the bankruptcy itself, and invoke no substantive rights in bankruptcy. *See id.*; *In re The Guild and Gallery*, 72 F.3d at 1178. In such a case, the district court "must abstain from hearing a purely state law claim where there is no other basis for federal jurisdiction other than its relatedness to a bankruptcy proceeding (including one where the debtor is a party)." *State Bank of Lombard v. Chart House*, 46 B.R. 468, 472 (N.D.Ill.1985).

The Third-party Action presents an even clearer case. UJB's third-party claims do not seek recovery from the Debtor and instead name only the individual shareholders of the law firm who guaranteed the 1991 loans. The claims relate solely to state law and do not remotely invoke a substantive right in bankruptcy, nor do they involve administration of the estate. Instead, the third-party claims involve pre-petition guarantees that relate only tangentially to the Debtor's reorganization. Clearly, this action may not be deemed to be within the "core" jurisdiction of the bankruptcy court.

■ Instead of being proceedings which "could arise only in the context of a bankruptcy case," *id.*, both the Burke Action and the Third-party Action are clear state law cases that, but for the intervention of the Debtor's Chapter 11 filing, could only have been brought in state court. Further, the Court notes that while the eventual recovery of the accounts receivables by the various parties may effect, even drastically, the Debtor's estate, "subsection (O) does not render a proceeding core merely because the resolution of the action results in more, or less, assets in the estate." *In re Baranello & Sons, Inc.*, 149 B.R. 19, 25 (E.D.N.Y.1992) (citing *Mohawk Indus., Inc. v. Robinson Indus., Inc.*, 46 B.R. 464, 456–66 (D.Mass. 1985)).

The Court therefore finds both the Burke Action and the Third-party Action to be entirely non-core matters related to a case arising under Title 11. All of the criteria for mandatory abstention have been satisfied, and, therefore, the Court will remand the Burke Action and the Third-party Action to the Essex County Superior Court. *See Balcor*, 181 B.R. at 788 ("Where abstention is appropriate, or required, remand will follow.").

### 2. Equitable Remand and Permissive Abstention

Although the Court finds that mandatory abstention is wholly appropriate in this case, it will nonetheless address the doctrines of permissive abstention and equitable remand, which require an identical conclusion.

■ The equitable considerations relevant to determine the appropriateness of

equitable remand and permissive abstention under Sections 1452(b) and 1334(c)(1), respectively, are essentially identical, and, therefore, a court's analysis is substantially the same for both types of relief. *See Balcor*, 181 B.R. at 788; *In re Joshua Slocum, Ltd.*, 109 B.R. 101, 105 (E.D.Pa.1989). Among the factors to be considered by courts in making a decision whether to abstain and remand are the following:

(1) the effect on the efficient administration of the bankruptcy estate;

(2) the extent to which issues of state law predominate;

(3) the difficulty or unsettled nature of the applicable state law;

(4) comity;

(5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(6) the existence of the right to a jury trial; and

(7) prejudice to the involuntarily removed defendants.

*Balcor*, 181 B.R. at 793; *Port Authority v. CCI–Bowers Co.*, 1992 WL 164441, *3 (D.N.J. 1992).

■ Having found that mandatory abstention applies in this case, the Court also concludes that equitable remand is also appropriate. As discussed *supra*, this litigation involves contract and tort claims that arose before the Debtor's Chapter 11 filing, the resolution of which will "neither significantly hinder nor materially advance the efficient administration of the bankruptcy estate." *Port Authority v. CCI–Bowers Co.*, 1992 WL 164441 at *4. Further, issues of state law clearly predominate. Diversity of citizenship does not exist here, and absent "related to" bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334, this Court would not have subject matter jurisdiction over the action. All of the claims are based in state law, and the claims do not turn on the determination of any issues arising under the Bankruptcy Code. Though the Court cannot find that the claims in this suit implicate especially difficult or novel principles of state law, it does conclude that the state court is better suited to decide claims based upon attorney malpractice, many of which are based upon state principles of professional responsibility and attorney ethics. Deference to the state courts, which are "better able to respond" to such claims, *see In re Comtek Electronics, Inc.*, 23 B.R. 449, 451 (Bankr.S.D.N.Y.1982), requires the Court to refrain from hearing these matters. Finally, as discussed *supra*, the claims in both the Burke Action and the Third-party Action relate to the Debtor's bankruptcy proceeding only tangentially. Therefore, these equitable factors compel the conclusion that the remand of this action is appropriate under the doctrines of permissive abstention and equitable remand, pursuant to 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b), respectively.

## II. MOTION FOR RELIEF FROM THE AUTOMATIC STAY

■ Plaintiff Burke also seeks relief from or modification of the automatic stay under 11 U.S.C. § 362(d). Because the Court has found this to be a non-core proceeding, only an Article III judge may enter a final order lifting or modifying the stay imposed pursuant to 11 U.S.C. § 362(a). *See* 28 U.S.C. § 157(c)(1); *Balcor/Morristown v. Vector Whippany Assoc.*, 181 B.R. 781, 789 (D.N.J. 1995) (Article III district courts have primary jurisdiction over non-core cases and may refer matters to Article I judges for Report & Recommendation). Accordingly, the Court will craft this section of its decision as a Report & Recommendation.

The automatic stay from which Burke seeks relief is set forth in 11 U.S.C. § 362(a) which provides in relevant part:

(A) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the cause under this title, or to recover a claim against the debtor that arose before the commencement of the cause under this title. . . .

11 U.S.C. § 362(a). The statute permits relief from this automatic stay through Section 362(d):

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d).

■ Courts do not apply a rigid test when determining whether "good cause" exists to modify an automatic stay. Instead, when deciding when sufficient cause exists for lifting the stay, courts must conduct a balancing test in which the interests of the Debtor's estate are weighed against the hardships that will be incurred by the movant. *See In re Weatherley,* 169 B.R. 555, 562 (Bankr.E.D.Pa.1994); *In re Int'l Endoscope Manufacturers, Inc.,* 79 B.R. 620 (Bankr. E.D.Pa.1987).

■ In this case, the Court has found the action to be a proceeding "related to" a Chapter 11 case rather than a core proceeding, a distinction which reveals the clear congressional policy of permitting state law claimants to have their claims heard in state court. *See In re Castlerock Properties,* 781 F.2d 159, 163 (9th Cir.1986). Further, as plaintiff points out, two counts of its Complaint against the Debtor involve claims of attorney malpractice for which the Debtor is required to hold insurance. Courts often have permitted movants to pursue their state claims against debtors when recovery would be against an insurance company rather than the debtor itself. *See In re Fernstrom Storage & Van Co.,* 938 F.2d 731, 735 (7th Cir. 1991); *In re Peterson,* 116 B.R. 247, 249–50 (D.Colo.1990).

In balancing the hardships of the plaintiff and the Debtor, the Court finds that allowing plaintiff to pursue his claims for attorney malpractice against the Debtor will cause no additional prejudice to the Debtor's estate because its malpractice insurance carrier will assume the responsibility for the Debtor's defense, and a recovery from the carrier will not impose any financial consequences upon the estate. Further, as to the additional contract claim, a modification of the stay to allow Burke to pursue this claim in state court would pose no prejudice to the Debtor if the modification prohibits recovery of any claim without order of the bankruptcy court. Any prejudice to the Debtor resulting from a finding of liability on the contract claim would be eliminated by a modification of the stay that permits only a finding of liability and prohibits a further action to collect on the debt from the property of the Debtor. *See In re Turner,* 55 B.R. 498, 502 (Bankr. N.D.Ohio 1985). Similarly, if the state court litigation results in a finding of liability on the malpractice claims that exceeds the $100,000 coverage limit, the same is true.

Accordingly, the Court recommends that the stay should be modified to permit prosecution of Burke's state law claims against the Debtor. The Court further recommends that the stay order, however, shall be modified to permit only the state law adjudication of Burke's claims against the Debtor. The order should prohibit recovery of any judgment resulting from these claims in the absence of an order of the bankruptcy court.

## CONCLUSION

For the reasons stated herein, the Court grants the motions of plaintiff Burke and third-party plaintiff UJB for remand of this action to state court. The Court also recommends that Burke's motion to modify the stay be granted to permit him to adjudicate his claims against the Debtor in state court. The recovery of any judgment, however, should be prohibited until a further order of the bankruptcy court permits Burke to pursue an action to collect from the property of the Debtor.