**In re MSCP HOLDINGS, INC., Medicalogic/Medscape, Inc., Medicalogic Enterprises, Inc., Medicalogic Pennsylvania, LLC, Medicalogic of Texas, Inc., and Medicalogic Texas, L.P., Debtors.**

**Medicalogic/Medscape, Inc., f/n/a Medicalogic, Inc., Plaintiffs,**

**v.**

**Omar Amirana, et al., Defendant.**

**Bankruptcy Nos. 02–10253 PJW, 02–10258 PJW.**

**Adversary No. 02–06380.**

United States Bankruptcy Court, D. Delaware.

Sept. 10, 2004.

Patricia P. McGonigle, Seitz Van Ogtrop & Green PA, Wilmington, DE, Micah R. Jacobs, Jacobs & Ferraro, LLP, San Francisco, CA, for Defendant Spark Public Relations LLP.

Neil B. Glassman, Steven M. Yoder, Ashley B. Stitzer, The Bayard Firm, Wilmington, DE, for Plaintiff Medicalogic/Medscape, Inc.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This ruling is with respect to defendant Spark Public Relations, LLC's ("Spark") motion to dismiss for lack of jurisdiction or to dismiss or stay the proceedings in favor of arbitration. (Doc. # 15.) Medicalogic/Medscape, Inc. f/k/a Medicalogic, Inc.'s ("Medicalogic") complaint seeks monetary relief arising out of Spark's pre-petition

failure to pay a promissory note. For the reasons set forth below, the Court will grant a stay and direct that the dispute be submitted to binding arbitration.

## BACKGROUND

In anticipation of an upcoming IPO, Medicalogic hired Spark in mid–1999 to provide Medicalogic with public relations and marketing communications consulting services. To formalize this relationship, Medicalogic and Spark entered into an independent contractor services agreement on July 9, 1999 (the "Agreement"). Paragraph 3 of the Agreement describes the method of compensation Spark would receive in return for services provided, which compensation included both hourly rate payments and stock options. The specific terms regarding the hourly rate payments and stock options are contained in Exhibits B–1 and B–2, respectively, which are both specifically incorporated into the Agreement. Exhibit B–2 contains a detailed list of milestones which trigger the grant of stock options to Spark. The Agreement contains a provision stating that the parties agree to submit to binding arbitration any disputes "arising out of or related" to the Agreement. (Doc. # 17 Exh. A at 6, ¶ 10.)

On December 6, 1999 the parties entered into an Amendment which recites that "the parties wish to modify and supplement the provisions of the" Agreement. (Doc. # 17 Exh. B at 1.) Paragraph 1 of that Amendment states that "[t]he parties agree to modify the provisions of the Agreement such that in lieu of providing [Spark] with a stock option . . . [Medicalogic] will provide [Spark] with . . . 30,000 shares of stock at a strike price of $6.50 per share." (*Id.* at 1, ¶ 1.) The Amendment goes on to state that Spark would furnish consideration by executing a promissory note in the amount of $195,000.

Paragraph 4 of the Amendment recites: "Except as explicitly modified by this Amendment, all terms, conditions and provisions of the Agreement shall continue unchanged in full force and effect." (*Id.* at 1, ¶ 4.) Thus, the Amendment had the effect of amending Exhibit B–2 to the Agreement and, of course, thereby amending the Agreement itself and, by reason of the last quoted provision, the Amendment carries with it the arbitration obligation. On December 6, 1999, Spark executed a promissory note in the same form as Attachment A to the Amendment (the "Note"). The maturity date of the Note is June 15, 2000.

The Amendment further provides that Spark was entitled to additional stock options. The terms of these new stock options are contained in a stock option agreement that was likewise executed on December 6, 1999 and followed the form of Attachment B to the Amendment (the "Stock Option Agreement").

On January 24, 2002 (the "Petition Date"), Medicalogic and its related entities (collectively, "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* On November .6, 2002, Medicalogic filed a complaint commencing this adversary proceeding against numerous defendants, including Spark, that, as to Spark, seeks recovery from Spark's failure to pay the Note. On March 3, 2003 a liquidation plan was confirmed in this chapter case and the plan was subsequently consummated.

In seeking dismissal of the adversary proceeding, Spark argues that the Court lacks jurisdiction because the claim arose pre-petition. Alternatively, Spark argues that the Court should dismiss or stay the proceedings in favor of arbitration because the Note is part of the Agreement and, therefore, subject to the arbitration clause.

In response, Medicalogic argues that the Court has jurisdiction and should not stay proceedings because the Note is a separate transaction that is not bound by terms of the Agreement, including the arbitration clause.

## DISCUSSION

The Court agrees with Spark's contention that the adversary proceeding is not a core proceeding as contemplated by 28 U.S.C. § 157(b)(1),[1] however, the Court has jurisdiction over the action as a non-core proceeding pursuant to 28 U.S.C. § 157(c)(1).[2] And, for the same reasons, this proceeding does not meet the mandatory requirements for abstention under 28 U.S.C. § 1334(c)(2),[3] nor would abstention be otherwise appropriate under 28 U.S.C. § 1334(c)(1).[4] Nonetheless, as discussed below, the Court finds that the Note is part of the Agreement and, therefore, subject to the arbitration clause.

A motion to dismiss for lack of subject matter jurisdiction is governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7012. In discussing the standard to be used in assessing a Rule 12(b)(1) motion, the Third Circuit has stated:

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings.

*Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000) (citations and footnote omitted).

■ The Third Circuit has "held that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.),* 72 F.3d 1171, 1178 (3d Cir.1996) (quoting *In re Marcus Hook Dev. Park Inc.,* 943 F.2d 261, 267 (3d Cir.1991)).

1. 28 U.S.C. § 157(b)(1) provides:

   Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

2. 28 U.S.C. § 157(c)(1) provides:

   A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

3. 28 U.S.C. § 1334(c)(2) provides:

   Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

4. 28 U.S.C. § 1334(c)(1) provides:

   Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

■ The subject complaint is based upon an alleged failure to fulfill obligations owing under the pre-petition Note. Such an action is based on contract law, does not invoke a right provided by title 11, and could be asserted outside the context of the bankruptcy case. The action is not a core proceeding.

■ However, the complaint clearly constitutes a proceeding related to the bankruptcy case. "A proceeding is related to bankruptcy if *'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'*" *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir.1991) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original)); *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 757 (D.N.J.1996). In this case, Medicalogic's complaint seeks unpaid amounts allegedly owing under the Note. Resolution of this matter clearly impacts on Medicalogic's rights and on the funds available for distribution. Therefore, the Court has non-core jurisdiction.

Under Third Circuit precedent, given the state of affairs of this chapter 11 case, if the Note is subject to the Agreement's arbitration clause, the Court must grant a stay and direct that the dispute be submitted to arbitration. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156–61 (3d Cir.1989). Thus, I turn to the construction of the Agreement and the Amendment.

■ It is undisputed that this matter is subject to the Federal Arbitration Act ("FAA"). Where contracts are covered by the FAA, "the question of whether ... there is an agreement to arbitrate an issue or dispute upon which suit has been brought is governed by federal law." *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk*, 585 F.2d 39, 43 (3d Cir.

1978). As the Third Circuit explained in *Becker:*

> It is true that, if the parties agree that certain disputes will be submitted to arbitration and that the law of a particular jurisdiction will govern the resolution of those disputes, federal courts must effectuate that agreement. However, whether a particular dispute is within the class of those disputes governed by the arbitration and choice of law clause is a matter of federal law.

*Id.* (citations and footnote omitted).

■■ Where federal law governs the interpretation of a contract, the court is guided by general principles of contract interpretation. *United States v. Seckinger*, 397 U.S. 203, 209–10, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970). Williston provides one such principle applicable to the matter here:

> "[I]n the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together as one contract or instrument, even though they do not in terms refer to each other."

11 Williston on Contracts § 30:26 (4th ed.2004) (footnotes omitted). Similarly, the Restatement on Contracts provides that "[a] writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together." Restatement (Second) of Contracts § 202(2) (1981).

■ It is clear, both from the facts as recited by the parties and by the documents themselves, that the Note and the Amendment were executed contemporaneously and in contemplation of each other. Both the Amendment and the Note were executed on December 6, 1999, by and

between Spark and Medicalogic and make reference to each other. Paragraph 1 of the Amendment states that the promissory note shall be "in the same form as Attachment A." (Doc. 17 Exh. B at 1, ¶ 1.) Indeed, it appears, based on the documents submitted to the Court, that Attachment A to the Amendment is in fact the executed Note and, therefore, the Amendment specifically refers to the executed Note. (*Id.* at 1–4.) Moreover, the Note does not make sense without reference to the Amendment because the shares provided to Spark by the Amendment were the collateral used to secure the Note. Clearly the Note and the Amendment were one transaction and, as such, should be construed together. As noted above, paragraph 4 of the Amendment recites that except as to the modifications made by the Amendment, "all terms, conditions and provisions of the Agreement shall continue unchanged in full force and in effect," (Doc. # 17 Exh. B at 1, ¶ 4.) so that the Amendment, including the amended Exhibit B–2, carries with it the arbitration obligation.

Medicalogic argues that the fact the Stock Option Agreement was executed under the same circumstances as the Note and contains a provision stating that it "constitutes the entire agreement between the parties" leads credence to the fact that the Note is also a separate agreement. Initially, the Court is not convinced that this provision would be sufficient to avoid arbitration of any disputes under the Stock Option Agreement. However, even if it were sufficient, the Note does not contain a similar provision. The fact that the parties used such a provision in the Stock Option Agreement demonstrates they understood how to create a separate agreement. The fact that the Note lacks a similar provision, if anything, leads to the conclusion that the parties did not intend the Note to be separate from the Amendment.

Medicalogic argues the Agreement's arbitration provision is inapplicable to the Note because the Note contains a provision dealing with costs incurred "at trial" and a choice of law provision that differs from the Agreement. (Doc. 17 Exh. B at 3–4, ¶¶ 3, 8.) Regarding the costs provision, I find this to be a boilerplate provision that is standard in many forms of promissory notes and, therefore, does not necessarily reflect the parties' intention with respect to the Note disputes being subject to arbitration. As to the choice of law provision, this only reflects that the parties intended the Note would be interpreted under Oregon law. The impact of this is only that the arbitrator will apply Oregon law in interpreting the Note.

## CONCLUSION

For the reasons set forth above, I will grant Spark's motion to the extent of staying this adversary proceeding and directing the parties to proceed with arbitration pursuant to the terms of the Agreement.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of this date, the Defendant's motion (Doc. # 15) to dismiss for lack of jurisdiction or to dismiss or stay the proceedings in favor of arbitration is GRANTED to the extent that the adversary proceeding is stayed and parties shall proceed with mandatory arbitration.