### In re TRANS WORLD AIRLINES, INC., et al., Debtors.

### Trans World Airlines, Inc., et al., Plaintiffs,

v.

### Carl Icahn, Karabu Corp., Lowestfare.Com., Inc., Global Discount Travel Services, LLC, High River Limited Partnership and American Airlines, Inc., Defendants.

Bankruptcy No. 01–0056(PJW).
Adversary No. 01–82.

United States Bankruptcy Court, D. Delaware.

March 19, 2002.

44

Laura Davis Jones, Bruce Grohsgal, Pachulski, Stang, Ziehl, Young & Jones P.C., Wilmington, DE, James H.M. Sprayregen, Alexander Dimitrief, Kirkland & Ellis, Chicago, IL, for plaintiffs.

Steven K. Kortanek, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Wilmington, DE, Edward S. Weisfelner, Scott M. Berman, John P. Biedermann, Berlack, Israels & Liberman, LLP, New York City, Co–Counsel for Carl Icahn, Karabu Corp., Lowestfare.com, Inc., Global Discount Travel Services, LLC, and High River Limited Partnership.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

Before the court is the motion (Doc. # 3) of Carl Icahn, Karabu Corp., Lowestfare.com, Inc., Global Discount Travel Services, LLC, and High River Limited Partnership (collectively, "Icahn Entities" or "Defendants")[1] to dismiss the complaint ("Complaint") of Trans Word Airlines, Inc. and its subsidiaries (collectively, "TWA")[2]. I will grant the motion for the reasons discussed below.

## BACKGROUND

In 1993, the Icahn Entities loaned TWA approximately $200 million in secured financing ("Icahn Loan") to facilitate TWA's exit from its first chapter 11 case. (Complaint ¶ 15.) When the Icahn Loan became due in January 1995, TWA was unable to repay. (*Id.*) In consideration for an extension of the Icahn Loan's maturity date to January 8, 2001, and as part of the exit financing in TWA's second chapter 11 case, the Icahn Entities entered into an agreement ("Ticket Agreement") with TWA pursuant to which Karabu Corp., or its assignee, received the right to purchase tickets for almost all TWA routes at 55% of the published fare.[3] (*Id.* at ¶ 16; Icahn Entities' Mem. of Law in Support of their Mot. to Dismiss ("Icahn Mem.") (Doc. # 3)

at 3.) Although the Icahn Loan was paid off by the end of 1997 via credits issued in lieu of cash payments whenever the Icahn Entities purchased discounted tickets under the Ticket Agreement, as of the date of the filing of the Complaint, the Icahn Entities maintained the right to purchase such discounted tickets under the terms of the Ticket Agreement. (Complaint ¶ 18.)

After emerging from its second chapter 11 reorganization, TWA continued to experience financial difficulties. TWA incurred operating losses of $29.26 million in 1997, $65.16 million in 1998, $347.64 million in 1999, and approximately $100 million in the first nine months of 2000. (*Id.* at ¶ 23.) TWA attributes much of its financial strife to the Ticket Agreement. (*Id.* at ¶ 20–22.) By the start of 2001, TWA had little cash to fund its day-to-day operations, and faced an impending liquidity crisis due to the fact that TWA's lending and receivables facility was due to mature on January 15, 2001. (*Id.* at ¶ 23.) Unable to obtain alternate financing, TWA began to negotiate the sale of substantially all of its assets to American on January 4, 2001. (*Id.* at ¶ 23–25.) On January 9, 2001, TWA and American entered into an asset purchase agreement ("Asset Purchase Agreement") pursuant to which American agreed to buy substantially all of

---

1. American Airlines, Inc. ("American"), also named as a defendant in the Complaint, does not join in the Icahn Entities' motion to dismiss.

2. TWA includes Trans Word Airlines, Inc., Ambassador Fuel Corporation, LAX Holding Company, Inc., Mega Advertising Inc., Northwest 112th Street Corporation, The TWA Ambassador Club, Inc., Trans World Computer Services, Inc., Transcontinental & Western Air, Inc., TWA Aviation, Inc., TWA Group, Inc., TWA Standards & Controls, Inc., TWA Stock Holding Company, TWA—D.C. Gate Company, Inc., TWA—LAX Gate Company, Inc., TWA Logan Gate Co., Inc., TWA—NY/NJ Gate Company, Inc., TWA—Omnibus Gate

Company, Inc., TWA—San Francisco Gate Company, Inc., TWA—Hanger 12 Holding Company, Inc., Ozark Group, Inc., TWA Nippon, Inc., TWA Employee Services, Inc., TWA Getaway Vacations, Inc., Trans World Express, Inc., International Aviation Security Inc., Getaway Management Services, Inc., and the Getaway Group (U.K.) Inc. (Complaint at 1, n. 1.)

3. The Ticket Agreement prohibited Karabu from purchasing tickets for flights originating or arriving in St. Louis, Missouri until September 14, 2003. (Icahn Mem. (Doc. # 3) at 3.)

TWA's assets in a bankruptcy sale ("Sale") for approximately $500 million plus the assumption of other liabilities up to $3.5 billion.[4] (Complaint ¶ 25.) In addition, American also agreed to provide TWA with up to $200 million in debtor-in-possession financing.[5] (*Id.* at ¶ 26.) Under the terms of the Asset Purchase Agreement, the closing of the Sale was conditioned upon the entry of a final order in bankruptcy rejecting any discounted ticketing agreements, including the Ticket Agreement, and the absence of any threatened or actual litigation related to the transactions contemplated by the Asset Purchase Agreement.[6] (*Id.* at ¶ 27; Asset Purchase Agreement at §§ 5.4(f), 5.4(r).)

On January 10, 2001 ("Petition Date"), the day after American and TWA executed the Asset Purchase Agreement, TWA filed its third voluntary petition for chapter 11 relief. (Icahn Mem. (Doc. # 3) at 5.) That same date, TWA also filed a motion to sell substantially all of its assets to American. (*Id.*) On or about January 26, 2001, in accordance with the terms of the Asset Purchase Agreement, TWA also filed a motion to reject the Ticket Agreement pursuant to 11 U.S.C. § 365(a)[7]. (*Id.* at 6.) Shortly thereafter, the Icahn Entities began to make repeated threats to commence litigation against American because of American's efforts in allegedly inducing TWA to file for bankruptcy protection and reject the Ticket Agreement. (Complaint ¶ 29.) In response, on February 5, 2001, TWA commenced the instant adversary proceeding seeking (i) declaratory judgment that the Icahn Entities do not have a cognizable claim against American or any other successful bidder for TWA's assets for tortious interference with contractual relations or any other cause of action stemming from TWA's rejection of the Ticket Agreement, and (ii) to enjoin the Icahn Entities from instituting any such litigation against American or any other successful bidder for the assets of TWA. (*Id.* at 12.) That same date, American filed an action against the Icahn Entities in the New York State Supreme Court ("New York Action") seeking similar relief.[8] (Icahn Mem. (Doc. # 3) at 6.)

On March 12, 2001, the Icahn Entities responded to TWA's Complaint by filing their motion to dismiss, arguing that (1) the Court lacks subject matter jurisdiction over the action, (2) the Court must and/or should abstain from adjudicating the action, and (3) the relief sought by TWA is barred by 11 U.S.C. § 524(e)[9]. (Icahn

---

4. American subsequently agreed to pay TWA $742 million. (TWA's Mot. for Summ.J. (Doc. # 4) at 6, n. 7.)

5. American subsequently agreed to lend up to $330 million. (TWA's Mot. for Summ.J. (Doc. # 4) at 7, n. 8.)

6. In a telephone conference on April 4, 2001, counsel for American informed Chief Judge Robinson that American intended to close the Asset Purchase Agreement with TWA on April 9, 2001, notwithstanding the fact that these conditions were not yet satisfied. (Icahn Reply (Doc. # 16) Ex. B, at 2.)

7. Section 365(a) provides:
   Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

8. On March 20, 2001, the Icahn Entities filed counterclaims against American in the New York Action alleging tortious interference with both existing and prospective contractual relations, and seeking an order obligating American to comply with the terms of the Ticket Agreement. (TWA's Opp'n (Doc. # 11) Ex. 1, ¶¶ 169–204.)

9. Section 524(e) provides:
   Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

Mem. (Doc. # 3) at 2.) That same date, the Court entered two orders (Docs. # 912, 920, Case No. 01–00056) (respectively, "Rejection Order" and "Sale Order", collectively "Orders") in the main bankruptcy case authorizing the sale of substantially all of TWA's assets to American (Doc. # 920), and authorizing TWA to reject the Ticket Agreement pursuant to 11 U.S.C. § 365(a) (Doc. # 912). On March 15, 2001, TWA filed a motion for summary judgment seeking a judicial declaration that the claims of the Icahn Entities against American are without merit. In response, on March 20, 2001, the Icahn Entities filed a motion to stay the proceedings on TWA's summary judgment motion pending a decision on their motion to dismiss.

## DISCUSSION

Defendants argue that the Complaint should be dismissed because the Court lacks subject matter jurisdiction over the action. I disagree. Although I agree with Defendants' contention that the instant adversary proceeding is not a core proceed-

ing pursuant to 28 U.S.C. § 157(b)(1) [10], the Court has jurisdiction over the action as a non-core proceeding pursuant to 28 U.S.C. § 157(c)(1) [11]. Nevertheless, because the circumstances of this proceeding satisfy the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2) [12], and because abstention would otherwise be appropriate pursuant to 28 U.S.C. § 1334(c)(1) [13], I will abstain from hearing the action and therefore, grant Defendants' motion to dismiss the Complaint.[14]

## I. Jurisdiction

Bankruptcy courts have jurisdiction to hear "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11". 28 U.S.C. § 157(b)(1). They also have jurisdiction over certain non-core proceedings which are "otherwise related to a case under title 11". 28 U.S.C. § 157(c)(1). Section 157(b)(2) sets forth a nonexclusive list of core proceedings. Relevant to the instant action, § 157(b)(2)(A), (N) and (O) provide:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

**13.** 28 U.S.C. § 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

**14.** 28 U.S.C. §§ 101 *et seq.* is hereinafter referred to as "§ --".

**10.** 28 U.S.C. § 157(b)(1) provides:

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

**11.** 28 U.S.C. § 157(c)(1) provides:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

**12.** 28 U.S.C. § 1334(c)(2) provides:

(2) Core proceedings include, but are not limited to—

 (A) matters concerning the administration of the estate;

 \*  \*  \*  \*  \*  \*

 ■■■ (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

 (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2).[15] Although the ambiguity of subsections (A) and (O) has caused variations in the manner in which courts distinguish between core and non-core proceedings, the Third Circuit has held that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir.1996) (quoting *In re Marcus Hook Dev. Park Inc.*, 943 F.2d 261, 267 (3d Cir.1991)). A proceeding is not "core" simply because it "arguably fits within the literal wording" of one of the listed proceedings under § 157(b)(2). *In re Lacy*, 183 B.R. 890, 893

(Bankr.D.Colo.1995); *see also Southeastern Sprinkler Co. v. Meyertech Corp. (In re Meyertech Corp.)*, 831 F.2d 410, 416 (3d Cir.1987) ("It is difficult to perceive of a proceeding which would not fall under the all-encompassing language of either § 157(b)(2)(A) or § 157(b)(2)(O), but we are cautioned that an expansive interpretation of these provisions may lead to some seemingly incorrect and overbroad results regarding core proceedings."). Rather, as the Fifth Circuit stated in *In re Wood*, 825 F.2d 90 (5th Cir.1987),

> [i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*Id.* at 97, *quoted in Torkelsen*, 72 F.3d at 1178. Such is the case here.

 ■■■ TWA argues that the instant proceeding is a "core" proceeding pursuant to § 157(b)(2)(A) and (O) because the Icahn Entities' claims ("Icahn Claims") against American derive from the exercise of TWA's rights, pursuant to 11 U.S.C. §§ 363 and 365, to reject the Ticket Agreement and sell substantially all of its assets to American.[16] (TWA Mem. (Doc. # 11) at

---

**15.** TWA contends that the instant adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

**16.** TWA also argues that the instant proceeding is a core proceeding pursuant to § 157(b)(2)(N) because it is "directly related" to a sale of property. (TWA's Mem. (Doc. # 11) at 13.) However, core proceedings under § 157(b)(2)(N) are those which arise from, concern, or have some impact on *"orders* approving the sale of property". 28 U.S.C. § 157(b)(2)(N) (emphasis added). The instant proceeding does not. To the extent

TWA argues that the instant action relates to the Order (Doc. # 920) entered by this Court on March 12, 2001 authorizing the sale of TWA's assets to American, I find the relationship to be insignificant. The instant action arises from TWA's desire and/or obligation to ensure the absence of the threat of litigation against American as a result of the actions contemplated by the Asset Purchase Agreement. Although as a result of TWA's subsequent bankruptcy filing, the Sale contemplated therein could not take place absent an order entered by this court pursuant to 11 U.S.C. § 363, it does not follow that the in-

13–15.) In addition, TWA argues that the Court has core jurisdiction because the Icahn Claims strike at the "core" of this Court's power and ability to administer TWA's bankruptcy case because the Icahn Claims would not exist but for the relief embodied in the Orders authorizing the rejection of the Ticket Agreement and the Sale.[17] (*Id.* at 14, 22.) I find these arguments to be unpersuasive.

Contrary to TWA's contentions, the instant proceeding neither invokes a substantive right provided by title 11, nor constitutes a proceeding which could only arise in the context of a bankruptcy case. *See Torkelsen,* 72 F.3d at 1178. TWA has commenced the instant action simply to determine the validity of the Icahn Claims and/or to enjoin the Icahn Entities from bringing such claims. Because the Icahn Claims sound in tort and have been asserted against American for its pre-petition role in allegedly inducing TWA to file for bankruptcy and reject the Ticket Agreement, it is clear that the Icahn Claims derive from American's pre-petition conduct in negotiating the terms of the Asset Purchase Agreement, not the exercise of TWA's bankruptcy rights as contemplated therein. As such, a ruling on this action depends on an interpretation of state law and not, as TWA contends, on an interpretation of TWA's rights under the Bankruptcy Code. *See In re Gardner,* 913 F.2d 1515, 1518 (10th Cir.1990) (per curiam) ("Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings."). This conclusion is evidenced by the fact that American has filed an identical action in New York state court seeking similar relief.

One of the primary reasons that TWA commenced the instant proceeding in the context of bankruptcy is that American would only agree to purchase of TWA's assets pursuant to a § 363 bankruptcy sale. In addition, the action has been commenced solely in order to satisfy one of the two conditions precedent to the closing of the Asset Purchase Agreement—the absence of any threatened or actual litigation against American for the actions contemplated in the Asset Purchase Agreement. Therefore, it is clear that the commencement of this action by TWA within the context of its bankruptcy case stems from TWA's pre-petition agreement with American. It does not flow from, nor implicate TWA's existence, rights and/or duties as a debtor-in-possession under title 11. As such, I find that although this proceeding is related to TWA's bankruptcy because of its potential effect on the estate, it does not constitute a core proceeding under § 157(a), (b). *See Matter of United States Brass Corp.,* 110 F.3d 1261, 1268 (7th Cir. 1997) ("Core proceedings are actions by or

---

stant proceeding, commenced in an effort to prohibit the Icahn Entities from asserting state law claims against American for its pre-petition conduct in negotiating the Asset Purchase Agreement, is the type of proceeding considered to be "core" pursuant to § 157(b)(2)(N). *Compare J.B. Van Sciver Co. v. William Cooper Assoc., Inc. (In re J.B. Van Sciver Co.),* 73 B.R. 838, 843–44 (Bankr. E.D.Pa.1987) (concluding that debtor's action based on breach of court-approved post-petition real estate sales agreement was core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N)) (cited by Debtor in support of its argument).

**17.** TWA contends that the Icahn Claims threaten the integrity of the Orders (Docs. # 912, 920) entered by this court pursuant to 11 U.S.C. §§ 363, 365 authorizing TWA to reject the Ticket Agreement and sell its assets to American. I disagree. The Orders have become final and TWA has already exercised its rights, pursuant to those Orders, to reject the Ticket Agreement and sell its assets to American. Whether or not they are successful, allowing the Icahn Entities to assert their claims against American will not alter that result.

against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law.").

█ Although Defendants' dispute that this proceeding is "related to" TWA's bankruptcy case and argue that the Court has no subject matter jurisdiction over the proceeding pursuant to § 1334(b) [18], I disagree. "A proceeding is related to bankruptcy if *'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy'*". *Marcus Hook,* 943 F.2d at 264 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)); *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.,* 194 B.R. 750, 757 (D.N.J.1996). Here, under the terms of the Asset Purchase Agreement, the closing of the Sale, approved by this Court pursuant to 11 U.S.C. § 363, was conditioned upon the entry of a final order in bankruptcy rejecting any discounted ticketing agreements, and the absence of any threatened or actual litigation related to the transactions contemplated by the Asset Purchase Agreement. (Asset Purchase Agreement at §§ 5.4(f), 5.4(r).) To satisfy the first condition, TWA moved to reject the Ticket Agreement pursuant to 11 U.S.C. § 365(a) on January 26, 2001. To satisfy the second, TWA filed the Complaint commencing the instant adversary proceeding. Thus, it is clear that the outcome of this proceeding "could conceivably" have an effect on the administration of TWA's estate because it seeks to enjoin that which, under the terms of the Asset Purchase Agreed,

had the potential to delay the closing of the bankruptcy Sale. As such, this proceeding constitutes a non-core matter. Therefore, I find that the Court has jurisdiction pursuant to § 1334(b).

## II. Abstention

█ Where a bankruptcy court has jurisdiction over a proceeding, it must nonetheless abstain from hearing the proceeding pursuant § 1334(c)(2) if six requirements are satisfied: (1) the motion to abstain is timely; (2) the action is based on a state law claim or a state law cause of action; (3) an action has already been commenced in state court; (4) the action can be timely adjudicated; (5) there is no independent basis for federal jurisdiction which would have permitted the action to have been commenced in federal court absent bankruptcy; and (6) the matter before the Court is non-core. *E.q., In re Donington,* 194 B.R. at 757; *In re Sun Healthcare Group, Inc.,* 267 B.R. 673, 676 (Bankr.D.Del.2000). TWA does not dispute that the first, second, third or fifth requirements for mandatory abstention have been met.

The Icahn Entities effectively moved for abstention in a timely manner by promptly submitting their motion to dismiss TWA's Complaint. As discussed above, the relief sought by TWA—a declaratory judgment that the Icahn Claims are without merit, and/or an injunction prohibiting the Icahn Entities asserting such claims—clearly depends on a determination under state law. I find that the commencement of the New York Action by American on the same date that TWA filed the Complaint in the instant proceeding satisfies the third requirement for mandatory abstention. Be-

---

18. Section 1334(b) provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

cause there is not complete diversity between all of the parties to the instant proceeding (Complaint ¶¶ 7–8), there is also no independent basis for federal jurisdiction absent § 1334. Having already found that the instant proceeding constitutes a non-core matter, *see* discussion *supra*, Part I, the only remaining issue is whether this action can be timely adjudicated in state court. *See, e.g., In re Donington*, 194 B.R. at 757; *In re Sun Healthcare*, 267 B.R. at 676.

■ TWA argues that this Court is in a better position to decide the action more quickly than the New York state court because this Court is familiar with the Ticket Agreement and the conduct giving rise the Icahn Claims, as well as the bankruptcy provisions and principles which "go to the heart of the declaratory judgment action." (TWA Mem. (Doc. # 11) at 29.) I disagree.[19] As discussed above, this action is dependent solely on a determination of state law and in no way implicates the provisions and/or principles of the Bankruptcy Code. The fact that the New York Action was commenced on the same date as the filing of TWA's Complaint indicates that the New York state court should be at least as far along in the proceeding as we are here. Indeed, while the Icahn Entities have yet to answer the Complaint in the instant proceeding, they have already filed counterclaims against American in the New York Action. Although TWA contends that a disposition on its pending motion for summary judgment is proper, the Icahn Entities oppose that motion. Therefore, it is unclear whether this Court could dispose of the proceeding more quickly than the New York state court. Rather, given the current burden on this Court's docket, I find it likely that this action would be more quickly adjudicated in the New York state court.[20] In addition, the issue under § 1334(c)(2) is not whether the action would be *more quickly* adjudicated in this Court than in the state court, but rather, whether the action can be *timely adjudicated* in the state court. Given the facts and circumstances surrounding this proceeding, I find that it can. Therefore, mandatory abstention is proper under § 1334(c)(2).

■ Even if abstention were not mandatory under § 1334(c)(2), I find that it would otherwise be appropriate under § 1334(c)(1). In light of the facts and

19. TWA also argues that abstention serves neither the ends of federalism, comity, nor judicial economy because abstention "would mean that the court with the lesser interest is forced to decide issues of enormous import to the substance and integrity of the federal bankruptcy system." (TWA Mem. (Doc. # 11) at 29.)

20. TWA also argues that mandatory abstention is improper because the Icahn Claims attempt to circumvent or vitiate the Orders entered by this Court in TWA's main bankruptcy case. However, as discussed above, the Icahn Claims arise out of American's alleged pre-petition conduct in inducing TWA to file for bankruptcy and reject the Ticket Agreement. They pose no threat to this Court's authority to make determinations and enter orders in TWA's bankruptcy case. The

fact that this Court has already found that TWA and American have acted in good faith (Tr. of Hr'g, 3/12/01 at 813–814, TWA's Mem. (Doc. # 11) at Ex. D) in connection with the Sale does not change the result. Although TWA asserts that allowance of the Icahn Entities' claims would require the state court to question the authority of this Court to interpret the Bankruptcy Code and possibly reverse the Court's findings of good faith, I disagree. It may be true that some of the determinations previously made by this Court in TWA's main bankruptcy case may be relevant to a determination of the validity of the Icahn Claims under state law. However, a finding by the state court that the Icahn Claims are valid under applicable state law will not refute the findings made by this Court under the Bankruptcy Code.

**52**

circumstances of this proceeding, most of the factors considered by courts when determining whether permissive abstention is appropriate weigh in favor of abstention here. These factors include: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which the issue of state law predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the presence in the proceeding of non-debtor parties; (12) the existence of the right to a jury trial; and (13) prejudice to the involuntarily removed defendants. *E.q., In re OMNA Medical Partners, Inc.*, 257 B.R. 666, 668 (Bankr. D.Del.2000); *Continental Airlines, Inc. v. Allen (In re Continental Airlines, Inc.)*, 156 B.R. 441, 443 (Bankr.D.Del.1993).

First, given that American commenced the New York Action on the same date as TWA commenced the instant proceeding, and given the weak nexus between this proceeding and TWA's main bankruptcy case, *see* discussion *supra* Part I, I find that allowing the matter to be litigated in New York state court will not disrupt the efficient administration of TWA's estate.

Second, both the Icahn Claims and the instant proceeding clearly turn on a deter-

mination of state law. Thus, the state law issues predominate over any bankruptcy issues involved. *See id.*

Third, I am not aware that any of the issues in the instant proceeding involve any difficult or unsettled questions of state law. Nevertheless, as discussed above, I find the New York state court to be the better forum to adjudicate such state law issues.

Fourth, a similar proceeding has already been commenced in New York state court.

Fifth, as discussed above, this court has no basis for jurisdiction other than § 1334.

Sixth and Seventh, this proceeding does not constitute a core proceeding and is only tangentially related to TWA's main bankruptcy case. *See id.*

Eighth, because all of the claims at issue in this proceeding turn on a determination of state law, there is no need to "sever" the state law claims from the core bankruptcy matters.

Ninth, given the current burden on this Court's docket, the action can be adjudicated in the New York state court at least as quickly as it could here.[21]

Tenth and Eleventh, it is unclear whether, as Defendants contend, TWA engaged in forum shopping by filing the instant action in this Court. However, given that American filed an identical action in New York state court and that the Icahn Claims constitute state law causes of action filed by one non-debtor against another, I find the New York state court to be the more appropriate forum.

Twelfth, this action does not implicate the right to a jury trial. However the Icahn Entities have asserted their right to a jury trial with respect to the counter-

---

**21.** This is particularly true since this proceeding constitutes a non-core matter for which the bankruptcy court may only issue findings of fact and conclusions of law which then must be submitted to the district court for final adjudication. *See* 28 U.S.C. § 157(c)(1).

claims asserted against American in the New York Action. In contrast, the Icahn Entities would be unable to have a jury determine the validity of the Icahn Claims if the action were to proceed in this Court absent removal to the district court. *See Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir.1990).

Finally, dismissing the instant action' and allowing the issues addressed herein to be decided by the New York state court will not prejudice TWA. As discussed above, the action does not implicate TWA's substantive rights under title 11 or affect the administration of TWA's bankruptcy estate.[22] The primary dispute raised by this action lies between the Icahn Entities and American. Therefore, the more appropriate forum for the dispute lies in the New York State Supreme Court where the Icahn Entities' and American's claims against each other remain pending.

For these reasons, I find it necessary and appropriate to abstain from hearing this adversary proceeding. 28 U.S.C. § 1334(c)(1), (2).

## CONCLUSION

For the reasons stated above, the Icahn Entities' motion (Doc. # 3) to dismiss the Complaint is granted. Therefore, TWA's pending motion (Doc. # 4) for summary judgment is moot.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of this date, it is ORDERED that:

(i) the motion (Doc. # 3) of Carl Icahn, Karabu Corp., Lowestfare.com, Inc., Global Discount Travel Services, LLC, and High River Limited Partnership (collectively, "Icahn Entities") to dismiss the complaint ("Complaint") of Trans Word Airlines, Inc. and its subsidiaries (collectively, "TWA")[1] is *granted;* and

(ii) TWA's pending motion (Doc. # 4) for summary judgment seeking a judicial declaration that the claims of the Icahn Entities against American Airlines, Inc. are without merit is deemed moot.

---

22. Despite the fact that the absence of litigation against American was a pre-condition to the closing of the Sale, and the primary reason TWA commenced this proceeding in the first place, American has subsequently agreed to close the Sale, notwithstanding the fact that the Icahn Claims remained pending. Because the Icahn Claims no longer threaten to delay the Sale, allowing the action to proceed in New York state court will no longer prejudice TWA or affect the administration of its bankruptcy case. Indeed, the closing on the sale took place months ago.

1. TWA includes Trans Word Airlines, Inc., Ambassador Fuel Corporation, LAX Holding Company, Inc., Mega Advertising Inc., Northwest 112th Street Corporation, The TWA Ambassador Club, Inc., Trans World Computer Services, Inc., Transcontinental & Western Air, Inc., TWA Aviation, Inc., TWA Group, Inc., TWA Standards & Controls, Inc., TWA Stock Holding Company, TWA-D.C. Gate Company, Inc., TWA-LAX Gate Company, Inc., TWA Logan Gate Co., Inc., TWA-NY/NJ Gate Company, Inc., TWA-Omnibus Gate Company, Inc., TWA-San Francisco Gate Company, Inc., TWA-Hanger 12 Holding Company, Inc., Ozark Group, Inc., TWA Nippon, Inc., TWA Employee Services, Inc., TWA Getaway Vacations, Inc., Trans World Express, Inc., International Aviation Security Inc., Getaway Management Services, Inc., and the Getaway Group (U.K.) Inc.