**In re HQ GLOBAL HOLDINGS, INC., et al., Debtors.**

**HQ Global Workplaces, Inc. and CarrAmerica Realty Corporation, Plaintiffs,**

**v.**

**The Bank of Nova Scotia and WFP One Liberty Plaza Co., L.P., Defendants.**

**Bankruptcy No. 02–10760 (MFW).**
**Adversary No. 02–4757 (MFW).**

United States Bankruptcy Court,
D. Delaware.

June 10, 2003.

Daniel J. DeFranceschi, Russell C. Silberglied, Etta R. Wolfe, Richards, Layton & Finger, P.A., Wilmington, DE, Corinne Ball, Andrew L. Buck, Jones, Day, Reavis & Pogue, New York City, Charles M. Oellermann, Jones, Day, Reavis & Pogue, Columbus, OH, for HQ Global Workplaces.

Karen C. Bifferato, Connolly, Bove, Lodge & Hutz, LLP, Wilmington, DE, Stephen A. Bogorad, Holland & Knight, LLP, Washington, DC, for Plaintiff Carr-America Realty Corporation.

William J. Burnett, Blank Rome Comisky & McCauley, Wilmington, DE, Douglas H. Flaum, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Bank of Nova Scotia.

Stephen T. Davis, Lawrence J. Tabas, Dorothy M. Claeys, Obermayer Rebmann Maxwell & Hippel, LLP, Wilmington, DE, for Franchisees' Committee and Certain Individual Franchisees.

Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, Mark S. Indelicato, Hahn & Hessen LLP, New

York City, for Official Committee of Unsecured Creditors.

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Motion of the Bank of Nova Scotia ("Scotia") to Dismiss or in the Alternative to Abstain from Hearing Count I and to Stay Hearing Count II of the Complaint filed in the above adversary proceeding. Both Plaintiffs have opposed the Motion. For the reasons set forth below, we deny the Motion.

## I. FACTUAL BACKGROUND

HQ Global Holdings, Inc., and several of its affiliates ("the Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code on March 13, 2002 ("the Petition Date"). Prior to the Petition Date, one of the Debtors, HQ Global Workplaces, Inc. ("HQ"), had entered into a sublease ("the Sublease") dated March 31, 1998, pursuant to which Scotia subleased to HQ the 23rd floor of One Liberty Plaza, New York, New York ("the Premises"). HQ's obligation under the Sublease was guaranteed by a non-debtor, CarrAmerica Realty Corporation ("Carr") pursuant to a written Guaranty.

Pre-petition HQ ceased paying rent to Scotia. HQ (and Carr) assert that HQ surrendered the Premises to Scotia, thereby terminating the Sublease and all obligations thereunder. This is disputed by Scotia, which asserts that HQ (and Carr) remain liable under the Sublease and Guaranty.

After filing its chapter 11 case, HQ (out of an abundance of caution) filed a Motion to reject the Sublease which was granted effective as of April 30, 2002. Thereafter, Scotia sent a demand letter to Carr seeking payment under the Guaranty of the accelerated rent due under the Sublease as a result of its rejection. On July 24, 2002, HQ and Carr filed a complaint in this Court against Scotia seeking a declaratory judgment that the Sublease was terminated pre-petition and that nothing remains due thereunder ("the Adversary Proceeding"). Two days later, Scotia commenced an action in the United States District Court for the Southern District of New York ("the New York Action") against Carr seeking payment of all sums due under the Sublease pursuant to the Guaranty.

On August 30, 2002, Scotia filed a proof of claim in the bankruptcy case asserting an administrative claim for post-petition rent in the amount of $119,320.06 and a rejection damages claim in the amount of $923,111.64. The Complaint was thereafter amended to add Count II which objects to allowance of the Scotia claims.

Scotia filed the instant Motion seeking dismissal or abstention on Count I of the Complaint and a stay of Count II until the New York Action can be decided. HQ and Carr oppose that Motion.

## II. DISCUSSION

### A. Motion to Dismiss Count I for Lack of Jurisdiction

■ Scotia's motion to dismiss is predicated on its argument that this Court does not have jurisdiction to determine the issues raised by Count I of the Adversary Proceeding, which seeks a declaration that the Sublease has been terminated pre-petition. Specifically, Scotia asserts that the Adversary Proceeding involves solely state

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

law issues and does not involve any bankruptcy issue. Thus, it concludes that the Bankruptcy Court has no jurisdiction over the dispute and it should be decided in the New York Action. Scotia cites several cases for this broad proposition. *See, e.g., Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir.1996) ("proceeding is core … if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case"); *Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.)*, 278 B.R. 42, 49 (Bankr.D.Del.2002) (adversary proceeding held to be non-core where decision depended on interpretation of state law, rather than Bankruptcy Code); *Charter Behavioral Health Sys. LLC v. Managed Health Network, Inc. (In re Charter Behavioral Health Sys. LLC)*, 277 B.R. 54, 57 (Bankr.D.Del.2002) ("an adversary proceeding based upon a disputed cause of action arising solely under non-bankruptcy law that is independent and antecedent to a Chapter 11 filing is non-core").

HQ responds that Count I of the Adversary Proceeding is core because it seeks a determination of an issue (whether the Sublease terminated pre-petition) that is the basis for its objection to Scotia's claim. Scotia has filed a proof of claim in this Court asserting that HQ is liable for the full amount due under the Sublease, and HQ has objected to that claim in Count II of the Adversary Proceeding.

■ We agree with HQ. The Adversary Proceeding involves the disallowance of claims asserted against the estate. Proceedings to allow or disallow claims against a debtor are expressly core. 28 U.S.C. § 157(b)(2)(B). The Bankruptcy Court is not deprived of its core jurisdiction over a claim simply because that claim must be decided under state law. 28

U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law"). *See also Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1389 (2d Cir.1990) (in determining whether a proceeding is a core proceeding, the "relevant inquiry is whether the nature of the adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power"); *Southeastern Sprinkler Co., Inc. v. Meyertech Corp. (In re Meyertech Corp.)*, 831 F.2d 410, 418 (3d Cir.1987) (creditor's action for breach of warranty based on state law was correctly characterized as a claim against the debtor which was a core proceeding).

■ In this case, Scotia has submitted to the jurisdiction of this Court by filing its proof of claim against HQ. *See, e.g., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (by filing proof of claim in bankruptcy case, creditor subjected itself to the jurisdiction of the bankruptcy court); *Pan Am. Airways, Inc. v. Evergreen Intl. Airlines, Inc.*, 132 B.R. 4, 7 (S.D.N.Y.1991) ("When a creditor files a proof of claim it submits itself to the bankruptcy court's equitable power, and the claims, even though arising under state law, become core proceedings within the jurisdiction of the bankruptcy court"). Scotia's proof of claim implicates the exact same facts as Count I of the Adversary Proceeding, whether the Sublease was terminated pre-petition. Consequently, Count I is a core matter.

Alternatively, Scotia argues that we do not have jurisdiction over Count I of the Adversary Proceeding to the extent it asks us to decide the rights of Carr versus Scotia. Scotia asserts that neither Carr

nor Scotia are a debtor in this case and the dispute between them is not "related to" HQ's bankruptcy case. The test for "related to" jurisdiction was articulated by the Third Circuit in *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir.1984) as "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."

Scotia argues that even though there are common issues of fact between Carr's claim and HQ's claim, this does not create jurisdiction over Carr's claim under the *Pacor* analysis. *Id.* Scotia further argues that our lack of jurisdiction over the dispute between Carr and Scotia is not "cured" by simply adding HQ as a "nominal" plaintiff. Instead, Scotia asserts that Carr's action must be bifurcated and dismissed for lack of subject matter jurisdiction. *See, e.g., Halper v. Halper*, 164 F.3d 830 (3d Cir.1999); *Marine Iron & Shipbuilding Co. v. City of Duluth (In re Marine Iron & Shipbuilding Co.)*, 104 B.R. 976, 988 (D.Minn.1989); *Marston Enterprises, Inc. v. Krupp Mortgage Co., L.P. (In re Baltic Assoc., L.P.)*, 149 B.R. 93 (Bankr.E.D.Pa.1993).

HQ responds that it is not simply a nominal plaintiff. HQ itself has a real stake in this dispute because it is the primary obligor on the debt to Scotia. The fact that the debt was guaranteed by Carr does not eliminate HQ's direct obligation. (This is "admitted" by the filing of a claim by Scotia against HQ in this bankruptcy case.) Further, HQ notes that to the extent Carr pays Scotia, Carr may have an indemnification claim against HQ. Thus, HQ argues that the outcome of the Adversary Proceeding will have an immense effect on its estate, because the allowance or disallowance of the direct claim of Scotia and the indemnification claim of Carr will directly affect distributions to creditors from the bankruptcy estate.

Scotia asserts that it only filed a proof of claim in this case as a protective measure after the Adversary Proceeding had been filed and that its claim will be mooted by any decision in the New York Action against Carr. If Scotia wins in that Action, it will collect from Carr and have no claim against HQ. If Scotia loses in the New York Action, it will be collaterally estopped from pursuing HQ. We conclude that Scotia's arguments are unavailing. While it is true that Scotia cannot collect on its debt twice, there is no assurance that it will not pursue HQ rather than Carr even if it wins against Carr. Nor can Scotia assure that Carr will, in fact, pay any judgment against it. The fact that Scotia has filed a claim in this Court, and not withdrawn it, confirms that that claim is still viable. This Court has subject matter jurisdiction over that claim.

Scotia also downplays the indemnification claim that Carr may have against HQ by pointing to the language of the Guaranty: Carr may not collect any indemnification from HQ until it has paid the entire amount due by it. (Guaranty at § 10.) Scotia asserts that since the Guaranty provides for Carr to pay the lease payments until March 31, 2008, no indemnification can arise until then.[2] HQ responds, however, that Scotia has already accelerated the amounts due under the Sublease and is suing Carr for all sums thereunder. Therefore, HQ asserts there is a real danger that Carr may have an indemnification claim against it.

---

**2.** The Bankruptcy Code provides that an indemnification claim may be disallowed until and unless the indemnitee actually pays the underlying claim in full. 11 U.S.C. § 502(e)(1)(B).

While Scotia asserts that a determination of its rights against Carr is unrelated to HQ or its estate, we disagree. The determination of the claim of Scotia against Carr involves the same facts and law as the claim of Scotia against HQ. Scotia's dispute with Carr is thus clearly related to HQ's bankruptcy case. *Pacor*, 743 F.2d at 994.

Further, a determination of the underlying issue between Carr and Scotia will determine whether Carr has an indemnification claim against HQ. We have jurisdiction over both the dispute between HQ and Scotia and the dispute between Carr and Scotia because both impact the bankruptcy estate and distributions to creditors. Count I of the Adversary Proceeding deals directly with the Scotia claim against the estate by seeking a declaration that the Sublease was terminated pre-petition, resulting in a conclusion that nothing is due by HQ (or Carr) to Scotia under the Sublease. Since this directly impacts the allowance of claims and potential claims against the estate, we have core jurisdiction to hear it. 28 U.S.C. § 157(b)(2)(A), (B), (C), & (O). For these reasons, we deny the Motion to Dismiss filed by Scotia.

### B. *Motion to Abstain*

 Scotia alternatively asks that we abstain from hearing the Adversary Proceeding until the New York Action can be concluded. Section 1334(c)(1) of title 28 provides for abstention in the court's discretion.[3] Courts have previously identified twelve factors relevant to the discretionary abstention decision:

In determining whether abstention is appropriate under section 1334(c)(1), courts consider the following factors:

(1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

*See, e.g., In re Continental Airlines, Inc.*, 156 B.R. 441, 443 (Bankr.D.Del.1993) (*quoting TTS, Inc. v. Stackfleth (In re Total Technical Servs., Inc.)*, 142 B.R. 96, 100–01 (Bankr.D.Del.1992) (citations omitted)).

### 1. *Effect on the administration of the estate*

Scotia argues that abstention will not have much of an effect on the bankruptcy

---

**3.** Section 1334(c)(1) states:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

estate because the New York Action involves two non-debtors. Therefore, it asks that we abstain from deciding the declaratory relief requested by Carr.

However, this makes no sense. The declaratory relief requested by Carr is the same as the relief requested by HQ. As we concluded above, the determination of the declaratory relief (that the Sublease terminated pre-petition) is the crux of the objection that HQ has to the claim of Scotia (and derivatively the claim of Carr). Since the instant Adversary Proceeding ultimately involves the allowance of claims against the estate (of Scotia and Carr), it clearly will have an effect on the administration of the estate.

We conclude that this factor does not favor abstention.

### 2. Extent state law issues predominate

■ Scotia notes that all the issues relating to the termination of the Sublease and its legal effect are governed by New York state contract and landlord/tenant laws. There are no bankruptcy issues involved. Scotia asserts that this factor overwhelmingly mandates that we abstain in favor of the New York Action. *See, e.g., Sun Healthcare Group, Inc. v. Levin (In re Sun Healthcare Group, Inc.)*, 267 B.R. 673, 679 (Bankr.D.Del.2000); *OMNA Med. Partners, Inc. v. Carus Healthcare, P.A. (In re OMNA Med. Partners, Inc.)*, 257 B.R. 666, 669 (Bankr.D.Del.2000).

HQ concedes that state law issues predominate, but asserts that this issue is not alone dispositive. *See, e.g., In re L & S Indus., Inc.*, 989 F.2d 929, 935 (7th Cir. 1993) ("Under bankruptcy law the presence of a state law issue is not enough to warrant permissive abstention, but it nevertheless is a significant consideration").

HQ notes that many issues heard by Bankruptcy Courts involve the application of state law.

We agree with HQ. Most claim proceedings require that the Bankruptcy Court apply state law to determine if a claim is allowable; nonetheless, Congress has determined that the Bankruptcy Court has core jurisdiction over allowance of claims in bankruptcy cases. 28 U.S.C. § 157(b)(2)(B). Therefore, we conclude that, while this factor favors abstention, it is not dispositive.

### 3. Unsettled issues of state law

The parties do not argue that any of the state law issues are novel or complex. *See, e.g., Williams v. Assocs. Fin., Inc. (In re Williams)*, 88 B.R. 187, 191 (Bankr. N.D.Ill.1988) (abstention is best when novel or unsettled issues of state law are involved); *Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*, 1995 WL 489711 (S.D.N.Y. August 15, 1995) (lack of complexity of state law issues reduces importance of this factor in deciding abstention). Therefore, this factor does not favor abstention.

### 4. Presence of related proceeding in state court

■ Scotia argues that the pendency of the New York Action which involves the same issues presented in the Adversary Proceeding favors abstention. HQ disagrees and points out that this factor is not satisfied because HQ is not even a party to the New York Action. Thus, there is no currently pending proceeding in the state court that involves a debtor. HQ asserts that any ruling in the New York Action will have no res judicata or collateral estoppel effect on the claims of HQ.[4]

---

4. While Scotia also suggests that any determination in its favor against Carr in the New York Action will not be res judicata as to HQ,

Carr disagrees. *See, e.g., Tyus v. Schoemehl*, 93 F.3d 449, 454 (8th Cir.1996) (litigant may be bound to judicial resolution of an issue in a

HQ further argues that even if it were a party to the New York Action, that action was actually filed *after* HQ had instituted the Adversary Proceeding. Thus, HQ argues that the "first to file" rule mandates that this Court (where the issue was first addressed) decide the matter. *See, e.g., First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989) ("where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances giving priority to the second"); *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971–72 (3d Cir.1988).

Scotia replies that the first to file rule is a standard applied in cases where a court is determining whether to enjoin an action in another court, not when it is determining whether to abstain from hearing the case before it. Therefore, Scotia argues there is no requirement that we hear the issue simply because HQ beat Scotia to the courthouse.

We agree with Scotia. We disagree with HQ's argument that this factor cannot be met by the pendency of an action in another court if that action was filed after the action in this court. What is relevant is the status of the other action (*i.e.,* whether it can proceed expeditiously to conclusion as compared to the case before us). In this case, it appears that both cases are moving on a parallel track and can be concluded expeditiously.[5]

However, we agree with HQ, that the Adversary Proceeding is the only case which is pending that has all the interested parties (Scotia, Carr and HQ). Therefore, a determination in the Adversary Proceed-

ing is not subject to the uncertainty of its enforceability as to all parties or the necessity of commencing ancillary actions for full relief.

Consequently, we conclude that this factor does not favor abstention.

### 5. *Independent federal jurisdiction*

There is no independent federal jurisdiction except 28 U.S.C. § 1334. Therefore, this factor favors abstention.

### 6. *Degree of relatedness to bankruptcy*

As noted above, the issues involved in the Adversary Proceeding are intimately related to the bankruptcy proceeding as they involve the determination of claims against the estate. *See, e.g., In re BKW Sys., Inc.,* 66 B.R. 546, 548 (Bankr.D.N.H. 1986) ("nothing is more directly at the core of bankruptcy administration ... than the quantification of all liabilities of the debtor"). Therefore, we conclude that this factor does not favor abstention.

### 7. *Substance of the proceeding*

■ While we have concluded that the Adversary is a core proceeding, it is the substance of the proceeding that is relevant to the abstention analysis, not simply whether it is core or non-core. *See, e.g., Trans World Airlines, Inc. v. Karabu Corp. (In re Trans World Airlines, Inc.),* 196 B.R. 711, 715 (Bankr.D.Del.1996). Scotia asserts that the dispute it has with Carr is only peripherally related to the bankruptcy case.

We disagree. As noted above, the dispute between Scotia and Carr involves the exact same factual and legal issues as the dispute between HQ and Scotia. Thus, it is directly related to this bankruptcy case. This factor favors denying abstention.

---

former proceeding even if it was not a party thereto if it is in privity with the entity that was a party).

5. The parties are conducting discovery under an agreement that will permit its use in either the Adversary Proceeding or the New York Action.

### 8. Feasibility of severing core matters

Scotia argues that there is no necessity to sever the matters in the Adversary Proceeding because abstaining or staying this proceeding will allow Scotia to proceed against Carr in the New York Action which, regardless of the outcome, will obviate the necessity of this Court deciding anything in the Adversary Proceeding.

We disagree. As noted above, even if Scotia wins against Carr, there is no guarantee that Carr will pay or that Scotia will not simultaneously pursue its claim against HQ. Until Scotia's claim (and possibly Carr's indemnification claim) is determined, the bankruptcy case cannot be concluded. Thus, it is not feasible, or expeditious to allow the New York Action to proceed first. This Court will still be required to decide the issues between HQ and Scotia and between HQ and Carr.

This factor favors denying abstention.

### 9. Court's docket

Scotia also argues that the New York Action is on an expedited track and can be decided much more promptly than in this Court, whose docket is overloaded.[6] We agree.

This factor favors abstention.

### 10. Forum shopping

Scotia notes that both the Guaranty and the Sublease contain choice of law and forum provisions that support allowing the New York court to hear the dispute.[7] It argues that the attempt by HQ and Carr to keep the action out of the New York courts amounts to forum shopping. *See, e.g., Pharmaceutical Research Assoc., Inc. v. Innovative Clinical Solutions, Ltd.,* 2001 WL 1819314 at *3 (Bankr.D.Del. July 12, 2001) (disregard for contractual choice of forum suggests forum shopping).

HQ replies that it is, in fact, Scotia who is forum shopping. It was not until HQ and Carr instituted the Adversary Proceeding that Scotia filed the New York Action, seeking a determination of the same issues in another forum. This was after Scotia had filed a proof of claim, thereby subjecting itself to this Court's jurisdiction for purposes of determining the validity of its claims.

We agree with HQ that this factor favors denying abstention.

### 11. Right to jury trial

The right to a jury trial is not implicated in this case because the parties contractually waived any such right. (Lease at § 25.03.) Thus, there is nothing to preclude this Court from hearing and deciding the issues presented.[8]

This factor also favors denial of abstention.

### 12. Presence of non-debtor parties

Scotia argues that this factor favors abstention because all the parties to the New York Action are non-debtors. *See, e.g., Beneficial Nat'l Bank, USA v. Best Reception Sys. (In re Best Reception Sys.),* 220 B.R. 932, 954–55 (Bankr.E.D.Tenn.1998); *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman,* 241 B.R. 511, 521

---

**6.** The statistics illustrate (and the Court is all too aware of) the fact that this Court is currently overwhelmed and unable to handle the existing case load, even with numerous judges from other districts rendering assistance.

**7.** Under Section 9 of the Guaranty, the parties submit to the jurisdiction of the New York courts for all issues related to its enforcement. Section 15 of the Sublease provides that suits regarding it "may" be brought in New York.

**8.** In contrast, we would not be able to conduct a jury trial. While section 157(e) of title 28 provides that a bankruptcy court may conduct a jury trial if it has been specially designated by the district court to do so, we have not been so designated.

(Bankr.S.D.N.Y.1999) (abstention is appropriate where the action presents a state law .contract dispute between non-debtors).

While HQ concedes this fact, it argues that it is not really relevant since the Adversary Proceeding before this Court is the only one that involves all the interested parties.

We agree with HQ. While non-debtor parties are involved in the Adversary Proceeding (as well as the New York Action), the issues necessarily involve the debtor, HQ, because they are at the heart of its objection to the claims of Scotia (and the contingent claim of Carr). Therefore, we conclude that this factor favors denial of abstention.

Having reviewed all the relevant factors, we conclude that the weight of them supports denial of the Motion to abstain.

### C. *Motion for a Stay*

Since we have declined to abstain from hearing the Adversary Proceeding in favor of the New York Action, a stay of this proceeding would be inappropriate. The motion for a stay is, therefore, denied.

### III. *CONCLUSION*

For the foregoing reasons, we deny the Motion of Scotia to dismiss, abstain from hearing or stay the Adversary Proceeding.

An appropriate Order will be entered.

### *ORDER*

AND NOW, this **10TH** day of **JUNE, 2003,** upon consideration of the Motion of the Bank of Nova Scotia to Dismiss or in the Alternative to Abstain from hearing Count I and to stay Count II of the above Adversary Complaint, and the Response of HQ and Carr thereto, and for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the Motion is **DENIED.**